MARGARET PARKER, appellant,

*v.*

ISABELLA L. COPLAND, administratrix of Jane J. Fisher, deceased, respondent.

[Submitted December 11th, 1905.   Decided June 18th, 1906.]

Where the subject of an alleged gift remains or is immediately replaced under the apparent dominion of the donor, the gift can be sustained as a *donatio causa mortis* only upon satisfactory proof that such continuation or restoration of the donor's dominion was not an integral part of the donative transaction concurred in as such by the deceased party to it.

---

On appeal from a decree advised by Vice-Chancellor Stevenson.

*Mr. William Seufert* and *Mr. Charles J. Roe,* for the appellant.

*Mr. James A. Gordon,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The question presented by this appeal is the efficiency of a gift of money *causa mortis*. The object of the complainant's bill is to enforce such gift against the administratrix of Mrs. Jane J. Fisher, deceased, the alleged donor, who died on the 23d day of November, 1901. On the 19th day of November, 1901, Mrs. Fisher had upon deposit in four several savings banks sums aggregating $4,000, her vouchers for which were the ordinary pass-books issued by such institutions. These books she kept in a tin box in a closet in the bedroom in which she lay, the door of the closet being locked and the key in the bureau drawer. At least, such were the facts on the 19th day of November, 1901. On this day the complainant, who resided in New York City, was on a visit to Mrs. Fisher, who then, according to the complainant's bill, gave her the several sums of money represented by these bank-books.

Before referring to the particulars of this occurrence of November 19th, it may be stated that on the 22d of November Mrs. Fisher became unconscious and died early on the morning of the 23d, and that up to the time when manifestly she was dying, the tin box containing the bank-books was locked up in her closet as it had been on November 19th before the occurrence of the transaction upon which the complainant relies to establish the donation to her of the moneys represented by the bank-books. The importance of the absolute identity of these *indicia* of Mrs. Fisher's dominion of the bank-books resides in the fact that the point upon which the case turns is whether by the transaction of November 19th Mrs. Fisher had, in the language of Chief-Justice Beasley, in *Cook* v. *Lum, 55 N. J. Law (26 Vr.) 373,* "completely stripped herself of her dominion of the thing given."

Bearing in mind that this is the crux of the case, the transaction to which it is to be applied was as follows: Mrs. Jane J. Fisher, a woman advanced in years, lived in the basement of a house owned by her in Jersey City, the front room of this basement serving as her bedroom, in which, on the 19th day of

November, 1901, she was practically bedfast. Her wants were attended to by two women, who were mutual friends of Mrs. Fisher and of Mrs. Parker, the complainant. Mrs. Parker, who lived in New York City, was an older acquaintance of Mrs. Fisher, having had friendly relations with her for many years, and during Mrs. Fisher's last illness Mrs. Parker visited her almost daily. On the morning of November 19th, 1901, Mrs. Parker was upon one of these visits to her sick friend, and had been in the sick-chamber for some little time when Mrs. Fisher said to her, "Maggie, come here," Margaret being the Christian name of the complainant. When Mrs. Parker had come to the bedside, Mrs. Fisher said to her, "Bring me my tin box." Mrs. Parker thereupon went over to the bureau and took from one of its drawers a key, which she used to unlock the door of the bedroom closet, from which she produced a tin box and brought it to Mrs. Fisher. Mrs. Fisher sat up in bed and opened the box, which was fastened with a hasp, and taking an envelope out of the box, handed it to Mrs. Parker, saying, "That is for you, Maggie; that is yours; those are my bank-books, and I give them to you, a free gift, for your goodness and attention a lifetime to me." Mrs. Parker either said "Thank you," or merely bowed her head, saying nothing, and then replaced the tin box in the closet, the door of which she locked, returning the key to the bureau drawer. This closed the transaction as far as the witnesses to it, other than Mrs. Parker, could testify. Neither of these witnesses saw the books replaced in the box before the box was restored to its place in the closet, but Mrs. Parker, when offered as a witness in her own behalf, testified that she put the bank-books back in the tin box and then put the tin box, with the books in it, back in the closet.

From this reference to Mrs. Parker's testimony it must not be inferred that we acquiesce in the propriety of its admission, even as to this part of the transaction. The propriety of this ruling is not, however, challenged by this appeal.

The complainant further testified that this tin box also contained at this time a deed for a cemetery lot out west that she had brought to show Mrs. Fisher, "and a few other things," to

use the words of the witness, "that I had that I wanted her to
keep for me—a few trinkets that belonged to my little girl that
was dead—rings, and things like that."

If the money that Mrs. Fisher had on deposit in the savings
banks became upon her death the property of Mrs. Parker as a
gift *causa mortis,* it was by force of the foregoing circumstances.

We accept the conclusion of the learned vice-chancellor who
heard the cause that the foregoing testimony shows that Mrs.
Fisher manifested "a clearly-formed donative purpose with re-
spect to these four book accounts," and we also concur in the
further conclusion reached by him, namely, that where the sub-
ject of an alleged gift remains or is immediately replaced under
the apparent dominion of the donor, the gift can be sustained
as a *donatio causa mortis* only upon satisfactory proof that such
continuation or restoration of the donor's dominion was not an
integral part of the donative transaction concurred in as such
by the deceased party to it.

The reason why this must be so is stated with accustomed
clearness by Chief-Justice Beasley, in the opinion in *Cook* v.
*Lum,* already referred to. After reviewing the embarrassments
incident to this class of cases when extended to constructive de-
liveries, the learned jurist continues: "But this was a maze not
without its clue, for the cardinal principle as to what consti-
tuted a delivery that would legalize a gift was on all sides ad-
mitted and generally applied. The test was this, that the trans-
fer was such that, in conjunction with the donative intention, it
completely stripped the donor of his dominion of the thing
given, whether that thing was a tangible chattel or a chose in
action, and it is this absolute abnegation of power that, in a
legal point of view, makes the transaction enforceable. This is
the crucial test."

It necessarily follows from this that when a donor partici-
pates or concurs in a transaction, part of which is the retention
by him after the expression of his donative purpose of every
existing *indicium* of dominion over that to which such donative
purpose referred, an enforceable gift has not been legally estab-
lished, and this is true without regard to the clearness or cogency

with which the donative purpose may have been indicated, for in the above citation it will be noted that the crucial test is not the strenuousness of the language in which the gift is couched, but in "the transfer," which is something that is both different from the donative intention and yet capable of acting in conjunction with it, so that both are necessary to the creation of an enforceable gift. The absence of either is as fatal to the gift as if both were lacking, just as a legacy may fail either because it is not found in the will or because the will itself is not legally executed. Indeed, an impressive illustration of this distinction would be the existence of a holographic will containing the most copious expressions of a donative intention, which, even though signed by the testator, would not in the least effectuate the purpose so expressed. This illustration, which for obvious reasons must not be pushed too far, serves to emphasize the point that when two steps are required by law to complete a transaction, the excess of one cannot supply the lack of the other, a distinction not at all times regarded in the argument of the present appeal.

Agreeing as we do, then, with the court below, that the presumption that arises from the continuance of the donor's dominion over the thing he has expressed the intention to donate casts upon the donee the burden of satisfying the court that such dominion was apparent only and in fact formed no part of the donor's purpose, the question that next arises is whether in the present instance the complainant has made out such a case. Here again we concur in the conclusion of the vice-chancellor that such a case was not established. From no circumstance in the testimony can it be reasonably inferred that Mrs. Fisher did not know that the books were restored to their place in her box before it was returned to and locked up in the closet, or that, knowing this, she by any word or deed rebutted the presumption of dominion implied thereby, or that she did not consider the return of the books to their place in the box as an integral part of the transaction in which she was engaged. The only avoidance of the force of these considerations is the suggestion that because the tin box contained a cemetery deed and some

44

trinkets belonging to Mrs. Parker it was therefore as much her box as it was Mrs. Fisher's. If this suggestion requires an argumentative answer, it is furnished by the testimony of Mrs. Parker herself that she had given these articles to Mrs. Fisher "to keep for her," for from this it follows that the trinkets as well as the box were in Mrs. Fisher's keeping, not that the dominion of the box had become divided or had in any way passed to Mrs. Parker. Another circumstance testified to by the complainant militates strongly against the case she is called upon to establish, and that is her desire or at least her acquiescence in the procuring of a lawyer and the preparation of a will for Mrs. Fisher by which the complainant was to be recompensed for her friendly services to the testatrix. Standing alone, this piece of evidence might not be of controlling force, but when coupled with the fact that upon the occasion and for the purpose of this transaction the complainant produced the bankbooks and took part in a discussion in which they were treated as part of Mrs. Fisher's estate without disclosing that Mrs. Fisher had parted with these books by an absolute gift of them to her, the irresistible conclusion is that the complainant has failed by any satisfactory testimony to overcome the presumption of continued dominion in Mrs. Fisher that inheres in the undisputed facts testified to by herself and her other witnesses. The establishment of Mrs. Parker's claim could not, therefore, have been decreed by the court of chancery without an unwarranted relaxation of the legal rules controlling transactions of this character.

The failure of an intended benefaction, whether by gift or legacy, is one of the unavoidable inconveniences of having laws that must be observed. The present case, however, is not within this category if the gift that the court of chancery refused to enforce was not the gift that the benefactress intended to make. The intended benefaction, according to the proofs, was a gift that continued to be under the benefactor's dominion after it had been made. Indeed, the testimony fails to indicate that Mrs. Fisher's attention was ever for an instant directed to the making of a gift over which her former dominion should instantly and

completely cease, hence the gift that was denied enforcement was not the gift that Mrs. Fisher made or intended to make. In such a case effect could not be given to the whole of the donor's intent, even by the most lax application of legal rules, were such a course permissible. Of all legal rules, however, those that have grown up around the doctrine of *donatio causa mortis* should be the least subject to relaxation. Formed, as these rules were, at a period when personal property consisted for the most part of tangible chattels or private choses in action, they have survived to do duty at a time when fortunes of unprecedented dimensions are evidenced solely by documents that fall within their operation and effect. Under such circumstances, to relax the slender safeguards thrown around these gifts by the common law is to render it possible for anyone who has access to the sick-chamber, whether as doctor, lawyer, valet, nurse or what not, to lay successful claim to an entire estate by the production of a bare preponderance of parol proof, even though the dead man's fortune be found securely locked up in his strong box or other customary place of safe-keeping.

The decree advised by the vice-chancellor was the result of the application of the appropriate rule of law to the facts established by the testimony. The decree is affirmed.

*For affirmance*—The Chief-Justice, Garrison, Fort, Pitney, Swayze, Reed, Vredenburgh, Green, Gray, Dill—10.

*For reversal*—Garretson, Hendrickson, Bogert, Vroom —4.