WALLACE I. LAING

*v.*

FRANK DURAND, executor, et al.

[Submitted March 15th, 1915.   Decided April 10th, 1915.]

1. The delivery of a savings bank book with intent to make a gift of the deposit transfers title to the fund.

2. The owner of a savings bank deposit handed the bank pass-book to her daughter-in-law, with directions to give it to her husband, saying that she wanted him to have the pass-book and the money that was in the bank.   The daughter-in-law thereupon delivered the book to her husband and told him what his mother had said.   Subsequently his mother told him to make good use of the money, as it was all he would get. —*Held*, that the transaction constituted a valid gift of the fund.

3. On a bill to determine the ownership of a savings bank deposit claimed by complainant as a gift *inter vivos* from his mother, in whose name the deposit stood, by delivery of the pass-book, evidence examined and *Held* to show a donative intent.

4. When a savings bank book stood in the name of a husband and wife, and the husband died, leaving the wife as executrix and sole legatee, it will be presumed, after administration, that she has reduced her testator's interest in the deposit to her own possession, and could make a valid gift thereof.

*Mr. Charles E. Cook,* for the complainant.

*Messrs. Hyer & Armstrong,* for the defendants.

BACKES, V. C.

This litigation involves the ownership of a bank deposit of $783.05, which the complainant claims by a gift *inter vivos.* The fund is on deposit in the "Special Interest Department" or savings account of the Asbury Park and Ocean Grove Bank, in the name of "E. Laing or Sarah Emily Laing." The rules and regulations for depositing and withdrawing moneys are printed in the pass-book, the sixth one of which reads: "No deposit can be received or payment made under any pretence whatever, unless the depositor produces either his or her book at the counter of the bank." There seems to be no requirement for a draft in making withdrawals. Deposits and withdrawals are entered in the pass-book as they are made.

The gift, it is claimed, was made by the delivery of the pass-book, with donative intention. It is regarded, as the settled law of this state, that the delivery of a savings bank pass-book, without more, with intent to make a gift of the deposit, carries with it the fund. *Van Wagenen* v. *Bonnot, 72 N. J. Eq. 143,* concurred in by the court of errors and appeals, *74 N. J. Eq. 843; Cook* v. *Lum, 55 N. J. Law 373; Ridden* v. *Thrall, 125 N. Y. 572.*

The undisputed facts in the case are: The donor, Sarah Emily Laing, was the mother of the complainant. At her request, in 1905, he took his family, consisting of wife and son, to live with his parents at Asbury Park, where they made their

home until the mother died, in July, 1913. The father predeceased the mother some nine months. The parents were old and needed the help and comfort of the son and his wife. The mother at all times managed her household, the son's wife doing the housework, while the son paid $4 a week for his board. The mother had been ailing for a year, and realizing that her days were few, she, four months before her death, sent for her lawyer, Mr. Durand, the administrator-defendant in this case, and had him prepare a deed conveying the homestead, and the furniture in it, to the complainant, and a testament by which she gave the rest of her estate to her daughter and the complainant's son by a first wife, in equal shares. The deed was sent for record, and upon its return, about a month afterwards, and the next night after the postman left it, the mother called her daughter-in-law upstairs to her room and said to her: "Minnie, get me that black skirt;" she took out of it a key and said, "Minnie, go over to my trunk and hand me over that tin box in there." She unlocked the box, leaving the key in it, took out the deed, and said, "Minnie, I give this property, all the furniture and things in it" —to the complainant. She then took out of the tin box the bank pass-book and said:

"This bank book and the money that is in the Ocean Grove and Asbury Park Bank I want Wallace [the complainant] to have. I know he hasn't any money and he will need it."

She then put the deed and bank book back in the tin box, closed the lid and handed it to the daughter-in-law, saying, "Give this to Wallie." The daughter-in-law took the box to her room, and upon her husband's return she handed it to him and told him what his mother had said. He looked the contents over and the next morning when his mother came down to breakfast, he thanked her for the deed and bank book, and she said: "Take good care of those things and make good use of the money, for that is all you are going to get." The box and contents ever after that remained in the possession of the complainant, the wife storing it in her shirt-waist box in her room. The proof of the ceremony attending the gift rests solely upon the testi-

mony of the complainant's wife, it is true, but when taken in connection with corroborating circumstances in the case, it is entirely satisfactory and convincing and meets all of the requirements of the law for the making of a valid gift. *Stevenson* v. *Earl, 65 N. J. Eq. 721.*

To a woman confidant, a disinterested witness, the donor said that she knew she had not long to stay here; that she had not settled her personal affairs, and she could not die and feel that she had left her son and her grandson Harold unprotected; that she wanted to be just with all parties and didn't want a legal contest afterwards. To this lady, who was visiting the donor, she said: "I want Wallie to have the property (the homestead) and the bank book. He has no money to start with." The following day the witness was taken upstairs, when the donor took out of her closet a sealskin coat and said:

"I want my daughter-in-law, Minnie, to have this, and the clothes; she has been a good daughter to me, and I want to repay her. I couldn't have kept house without her, and I want her to have these things."

She then went to her trunk, unlocked it with a key, picked up numerous articles that she wanted disposed of to different ones, and from the bottom of the trunk she took her tin box. She opened it with a key and showed the witness the bank book in question, saying that she wanted it to go to her son Wallace, and that she wanted him to have the box and its contents. The witness, then, at the request of the donor, went for Mr. Durand, who came and drew the will and the deed, as already stated. This testimony is very persuasive of a design to make a gift in' the way it afterwards was made. We also have this: The donor was intent upon dividing her property equally between her two children, and the allegation in the bill is that the property devised and bequeathed to the daughter and grandson exceeds in value, considerably, the property given to the complainant. This is not denied, nor was there any proof to the contrary. There is nothing in the testimony indicating that influence was exerted upon the donor to make the gift, nor is there anything in the history of the case from which undue influence may be presumed or inferred. It is conceded by the defendants that the donor,

who was nearly eighty years of age, was, up to the time of her death, possessed of all her mental faculties, and from the evidence in the case it is apparent that she was master of her own affairs to the last.

. The point is made that because the bank book stood in the name of "E. Laing or Sarah Emily Laing," a gift of the fund could not be made; the argument being that Elden Laing, the donor's husband, was a common owner with the donor, of the fund, and that his share thereof belonged to his estate. Elden Laing left a will, in which the donor was the sole legatee and executrix. She administered the estate, and it is to be assumed that she reduced whatever interest her testator had in the deposit to her own possession.

I will advise a decree in favor of the complainant, without costs.