EDWARD G. WEISS, administrator of the estate of William J. Newby, deceased, complainant-respondent,

*v.*

EMILY FENWICK and MARY BLANCHFIELD, defendants-appellants.

[Submitted May term, 1932.   Decided October 17th, 1932.]

*Mr. Isadore Rabinowitz,* for the appellants.

*Messrs. Beggs & Grimshaw,* for the respondents.

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR.

The purpose of this proceeding in the court below was to declare void, certain alleged gifts from William J. Newby to his two sisters, the appellants, and a decree that such moneys should be, by them, returned to the estate of their deceased brother.

The decree appealed from sets aside and annuls such gifts and directs the repayment thereof to the administrator, respondent.

It indisputedly appears that Newby, at the time of making the gifts, was suffering from cancer of the throat, which was incurable; that he knew he had such disease and also that it was incurable and that he had but a short time to live. He had conducted a roadstand, which, because of his illness, he sold, and sometime in the early part of 1930 went to live with his sister, Emily Fenwick, one of the appellants, and on June 26th of the same year went with his sister, Mary Blanchfield, the other respondent. His condition of health at this time was so bad, and his malady was so advanced, that he could not lie down for fear of choking to death and was obliged to sleep sitting upright. He could scarcely articulate and, so far as he could, only in an almost inaudible whisper. His entire estate seems to have consisted of a deposit of $8,700, in a checking account in the Fairlawn-Radburn Trust Company, probably the proceeds in whole, or greater part, of the sale of his roadstand business.

On June 14th, 1930, he went to the bank with his sister, Mrs. Fenwick, withdrew $7,000 from this account, gave it to her and she deposited it in a savings account in the same bank to her own credit. Shortly thereafter, and, apparently, at the direction of Newby, acquiesced in by his sister, Mrs. Fenwick, this account was changed so that it stood to the credit of both Mrs. Fenwick and Mrs. Blanchfield, the two sisters of Newby.

Newby was married but he and his wife were not living together and had not been for some time. There were no chil-

dren. His wife visited him on several occasions during this time and up to his death. He died July 31st, 1930, less than seven weeks after the transaction before referred to, and the cause of his death was the cancerous throat conditions before referred to.

Sometime before his death (the proofs are silent as to when) he signed a check in blank upon his account in the aforesaid bank and on the day of his death this was filled by Mrs. Fenwick for the sum of $1,750, and cashed at the bank, depleting the amount on deposit so that there remained but $50.

The learned vice-chancellor who heard the cause, advised the decree before referred to, reaching the conclusion that the sums of money in question were not sustainable as gifts *inter vivos* because the donor thereby was stripping himself of practically his entire estate and that without the independent advice as to the effect thereof as required by the rule prevailing in this state.

He also found that the gifts were not induced by fraud or undue influence and were not unnatural dispositions of his property, although he was married, because he and his wife quarreled frequently and they found it convenient to live separately.

With these conclusions we agree and it may be added that there is proof that Newby did not desire to make a will disposing of his estate for fear that his wife would contest such a disposition and further because he did not wish that his wife should have the money as he feared she would dissipate it in drinking.

We agree that the gifts cannot be sustained as gifts *inter vivos,* and for the reasons stated, in the conclusions of the court below.

This is also conceded by the appellants, but they insist, that both are sustainable as gifts *causa mortis.*

A *donatio causa mortis* is a gift of personal property made by a party in expectation of death, then imminent, and upon the essential condition that the property shall belong fully to the donee in case the donor dies as anticipated, leaving the

donee surviving him, and the gift is not in the meantime revoked, but not otherwise. *28 C. J. 684 § 92; 3 Pom. Eq. Jur. (4th ed.) § 1146.* To constitute a valid gift *causa mortis* it must be made in view of the donor's impending death; the donor must die of the disorder or peril and there must be a delivery of the thing given. The donor must be competent to make the gift; there must be an intent upon his part to do so and an acceptance by the donee. *28 C. J. 687 § 97; 3 Pom. Eq. Jur. (4th ed.) § 1146.* The delivery must be such as is actual, unequivocal and complete during the limetime of the donor, wholly divesting him of the possession, dominion and control thereof. *28 C. J. p. 691 § 104; 3 Pom. Eq. Jur. (4th ed.) § 1149; Executors of Egerton v. Egerton, 17 N. J. Eq. 419; Buecker v. Carr, 60 N. J. Eq. 300; Meyers v. Meyers, 99 N. J. Eq. 560,* and cases there cited.

Such a gift need not be made by the donor when *in extremis.* *28 C. J. 688 § 100; 3 Pom. Eq. Jur. (4th ed.) § 1146.* Such was the holding of the learned vice-chancellor who heard the matter and, concededly, such finding is legally correct. It appears further by the conclusions filed by him, that, in so far as the gift of $7,000 is concerned, he found, in the proofs, all the necessary requisites of a gift *causa mortis* other than that it was revocable at any time during the lifetime of the donor. What induced him to find that the power of revocation did not exist seems to have been two items of proof; the one the testimony of one Angle, a friend of the donor, a funeral director and sales agent for cemetery plots, who after the time the gift in question was made attempted to induce Newby, the donor, to purchase perpetual care for the family plot in the Laurel Grove Cemetery, and the latter referred him to his sister; and the other item is the testimony of one of his sisters, Mrs. Fenwick, which was that on July 26th, five days prior to his death, her brother had asked her for a loan of $1,000, and she drew the money from the bank and said, "I gave it to my brother. I loaned it to him."

We think that neither of these items of proof is sufficient to destroy what otherwise amounted to a legally perfect gift *causa mortis.*

As to the testimony of Angle, a consideration of the proofs will demonstrate that Newby at that time, having in mind and fully appreciating that the time of his death was fast approaching, resented being reminded thereof by solicitations of this character and was unwilling to entertain and undertake any matter of business, particularly of this character. The other item, respecting the so-called loan of $1,000 stands without explanation. It may have been that the donor intended by that transaction to revoke his original gift, to that extent, or that by it and the giving to his sister of the signed blank check, he intended temporarily to deplete the original gift to that extent and replenish and re-establish it through moneys derived through and by the use of such check. However, and whatever the actual situation may have been, we are, as before indicated, unwilling to hold that an otherwise perfect gift *causa mortis* should be destroyed.

The peculiar element of the donation *causa mortis,* which distinguishes it from the one *inter vivos,* is its revocable nature. Although it is absolute in form, and although the thing must be delivered to the donee, yet the transaction is inchoate, and the property remains in the donor until his death. *3 Pom. Eq. Jur. (4th ed.)* § *1150.*

The recovery of the donor from the particular illness, or his survival of the peril, which existed at the time of the gift, and in contemplation of which the gift was made, will of itself operate as a revocation of the gift. This condition is implied and need not be expressed in words. But if it is expressed it tends to make plain the character of the gift, rather than to cast doubt upon it. *28 C. J. 698* § *120.*

As to the balance of this original gift of $7,000 we conclude that the decree under review should be reversed.

Directing our attention now to the fund of $1,750 obtained by the appellants, through the cashing of the blank check signed by Newby, their brother, and cashed immediately after his death, on the day of his death, we conclude that the decree below should be affirmed, because essential and necessary elements were lacking to establish a gift, either *inter vivos* **or** *causa mortis,* namely: absolute possession and control of the

property by the donee and lack of independent advice to make for a gift *inter vivos* and the same lack of possession and control to make for a gift *causa mortis*.

A check is but an order to pay, subject to revocation and stoppage of payment, and, therefore, until cashed and converted into money in hand, through payment by the drawee bank there is no exclusive control by the donee nor loss of control by the donor. *Provident Institution for Savings* v. *Sisters of the Poor of St. Francis, 87 N. J. Eq. 424.*

We are not here concerned with the status of the payee bank under *P. L. 1916 ch. 123.*

That part of the decree respecting the gift of originally $7,000 is reversed and that portion of the decree respecting the sum of $1,750 is affirmed, and the cause remanded to the court of chancery for the settlement of a decree in accordance herewith and also for the consideration and determination as to the proper distribution of counsel fees and costs.

