The complainant claims two savings bank accounts through a giftcausa mortis made by the defendant's decedent on April 11th, 1945, during his last illness; one account being for $2,950, shown by book No. 1,337,272, in The Bank for Savings in the City of New York, and the other for $3,000 shown by book No. 667,212, in the Williamsburg Savings Bank, located in the same city. (Exhibits C-2 and C-3.)
The decedent, Boleslaw Skurzynski, died on or about April 13th, 1945. For approximately five years prior to his death he rented a furnished room from the complainant at 134 Garden Street, Hoboken, New Jersey. *Page 521 
On or about April 11th, 1945, the complainant summoned Dr. Humbert Granelli to render medical aid to the decedent. The doctor visited the decedent in the complainant's home and after examining him ordered his removal to St. Mary's Hospital in the City of Hoboken, where the decedent died two days later. His ailment was diagnosed as chronic prostatitis. Dr. Granelli testified, when asked if the decedent were in imminent danger of death at that time (testimony, page 9): "I would say he was a very sick man, yes." The hospital records support the doctor's testimony.
Giulio Mastro Pasqua in behalf of complainant, testified he occupied a room adjoining the decedent's at 134 Garden Street, Hoboken, New Jersey; that he was acquainted with the decedent for approximately 16 years; that he and the decedent had been employed by the same concern for approximately 10 to 15 years; that they resided in complainant's apartment for approximately five years preceding the decedent's death; that the complainant had prepared meals at different times for the decedent and had taken care of him in his last illness; and that the decedent during his last illness, in his presence, handed two bank books to the complainant declaring, "Here is two books; I give them to you. If anything happens to me, you can have this two books for yourself." (Testimony, page 9.) When asked where the decedent took the books from, he said:
"He had them in his hands. I went into the room and saw the lady. The door was open, and I stepped inside and said, `How do you feel Pete?' He say, `I feel a little bit better.' This lady is talking to him, and he had the books in his hands and he gave them to the landlady and he said. `I give them to you. If anything happens to me, have these for yourself."
The witness identified the bank books Exhibits C-2 and C-3.
He further testified that the complainant was doing the cooking and washing for the decedent, and he said: "I know that because I see her. * * * This fellow was sick in bed and nobody attended to him but the landlady." (Testimony, page 11.) *Page 522 
The day following the decedent's death, a search was made of his effects in the complainant's home by police lieutenant, Ambrose Ryan, of the Hoboken police department. Ryan found seven bank books representing total deposits of approximately $13,000 belonging to the decedent, but not the above mentioned two bank books (Exhibits C-2 and C-3).
On behalf of the complainant it is contended that she acquired the bank books from the decedent as a valid gift causa mortis;
that when the gift was made the decedent was in the last stages of a fatal illness; that the gift was voluntarily made by the donor whose death was imminent; that the transfer of the accounts was made with a donative intent; that the subject of the gift effectually stripped the donor of all dominion and control over the same; and that she the donee accepted it.
The testimony of the complainant's witness, Giulio Mastro Pasqua, stands uncontradicted. Weiss v. Fenwick, 111 N.J. Eq. 385; 162 Atl. Rep. 609.
I am satisfied that the circumstances in the instant case indicate a valid gift causa mortis. It was made in view of the donor's impending death, which occurred two days after he delivered the books showing the bank accounts. Weiss v.Fenwick, supra.
The donor at the time of the transaction was competent. The uncontradicted evidence shows that it was his intention to make a gift and that there was an actual, unequivocal and complete gift by the decedent in his lifetime by which he wholly divested himself of the dominion and control of the two accounts, and that the complainant accepted it.
A donatio causa mortis is to be distinguished from one that is inter vivos by its revocable nature. The former may be revoked by the donor, while the latter type of gift is irrevocable. While a donatio causa mortis is absolute in form and there is a complete delivery to the donee, the transaction, as our Court of Errors and Appeals has said, is inchoate, and the property remains in the donor until his death. The recovery of the donor from his illness which existed at the time of the gift will of itself operate as a revocation. Weiss v. Fenwick,supra. *Page 523 
Our cases hold that the delivery of a savings bank book with the intent to make a gift of the deposit therein recorded, whereby the donor relinquishes the dominion and control of the account, transfers title to the fund. Van Wagenen v. Bonnott,72 N.J. Eq. 143; 65 Atl. Rep. 239; Laing v. Durand, 84 N.J. Eq. 404; 93 Atl. Rep. 884; Madison Trust Co. v. Allen, 105 N.J. Eq. 230; 147 Atl. Rep. 546; affirmed, 107 N.J. Eq. 183;151 Atl. Rep. 906; Rush v. Rush, 138 N.J. Eq. 611; 49 Atl. Rep. 2d238.
I shall advise a decree to conform with the views above expressed.