Plaintiff, as Executor of the estate of Elizabeth Colletta Inchcliffe deceased, seeks to recover possession of a savings bank book from defendant, Mrs. Margaret Kastner, who, in her counterclaim, seeks a declaration that the book is her property by way of gift causa mortis from the decedent.
The decedent entered St. Joseph's Hospital on September 15, 1944, and remained there until her death on January 4, 1945. The death certificate states that she died of cancer of the left breast, cardiac collapse and bilateral bronchial pneumonia. Shortly after the decedent's admission to the hospital the plaintiff, who had been her attorney for many years and had, in 1938, prepared her will devising and bequeathing her estate for charitable purposes, visited her. At that time she asked him for her savings bank book in the Paterson Savings Institution so that she would be enabled to draw funds for the payment of her expenses. Plaintiff delivered the book to her and made arrangements with the bank to honor her withdrawal slips. Thereafter plaintiff visited her on several occasions, including a visit about the middle of November, followed by a final visit on the date of her death. On none of these visits did plaintiff discuss the bank book with her.
The decedent had no children and her closest relative was her sister, the mother of the defendant. Several nieces and nephews, in addition to the defendant, survived the decedent. The defendant testified that although her mother was not on *Page 497 
good terms with the decedent, she had always been friendly with her Aunt, was notified when she went to the hospital, and thereafter visited her regularly at the hospital about three times a week. On occasions she brought small gifts and during the Christmas season she brought her a bed jacket and some fruit. On December 28, 1944, she visited her Aunt in the company of her friend Mrs. Edith Carter. Defendant testified that her Aunt reached under her pillow and brought out an envelope which she handed to her saying that it contained her money, that she was going to die, and that she wanted her niece to have it. On her way home she opened the envelope in Mrs. Carter's presence and found that it contained the savings bank book, together with a slip of paper which bore the writing, "Mrs. E.C. Inchcliffe To my nees Mary Kastner". Mrs. Carter testified that she had, on several occasions, accompanied the defendant on her visits to the hospital and fully corroborated her testimony with respect to the donation of the envelope and their subsequent ascertainment that it contained the bank book and slip of paper. The defendant also testified that when she visited her Aunt on December 30th, her Aunt repeated that she wanted her to keep what she had given to her.
Although plaintiff's bill of complaint alleged, in its first count, that the decedent never placed the funds represented by the savings book beyond her control and, in its second count, that the bank book was removed "surreptitiously and fraudulently", no direct evidence was introduced to disprove the testimony of the defendant, supported by Mrs. Carter, that the decedent had, with knowledge of impending death, made a gift to her of the bank book. Plaintiff did testify that he spoke with the defendant on the morning of the day of decedent's death and that among other matters she said, "I know where her bank book and bills and other papers are, do you want me to get them?" The defendant acknowledged the reference to other papers but denied that she had mentioned the bank book to the plaintiff. The defendant's conversation with the plaintiff occurred on the morning after the defendant had spent the entire night at the decedent's bedside and, while it may be deemed to raise troublesome inferences, it is not sufficient to discredit *Page 498 
the direct and otherwise uncontradicted testimony of the defendant and Mrs. Carter. In this connection it is worthy of mention that during the defendant's cross-examination, plaintiff's counsel unsuccessfully sought to elicit an admission that the defendant took the savings book from decedent's pocket-book in the presence of decedent's nurse; subsequently the defendant closed her case and plaintiff's counsel affirmatively stated before Vice Chancellor Lewis, who heard the testimony in the matter, that "we will probably have to arrange to take" the deposition of the decedent's nurse. It may not be without significance that plaintiff's case was permitted to remain closed without incorporating the suggested testimony in the record.Cf. 2 Wigmore, Evidence (3rd ed. 1940) § 285; DeinBacher,Inc., v. United States Fidelity Guaranty Co., 115 N.J. Eq. 205
(E. A. 1934).
From all of the evidence in the record it convincingly appears that the decedent, in expectation of death, then imminent, made a gift of her savings bank book to the defendant, which gift was never revoked and was followed by her death as anticipated. Under the law of our state, the gift constituted a valid donatio causamortis which entitles the defendant to the funds represented by the savings bank book. See Weiss v. Fenwick, 111 N.J. Eq. 385
(E. A. 1932); Borthwick v. Skurzynski, 139 N.J. Eq. 520
(Ch. 1947) aff'd 141 N.J. Eq. 363 (E. A. 1948).
Judgment will be entered against the plaintiff on his complaint and in favor of the defendant on her counterclaim. *Page 499