31 N.J. Super. 496 (1954)
107 A.2d 24
JULIA E. FOSTER, ET AL., PLAINTIFFS-RESPONDENTS,
v.
ADAM REISS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided July 12, 1954.
*498 Before Judges JAYNE, STANTON and HALL.
Mr. William F. McCloskey argued the cause for the appellant.
Mr. Ishmael Sklarew argued the cause for the respondents.
The opinion of the court was delivered by STANTON, J.A.D.
The plaintiffs are the personal representatives of Ethel Reiss who died testate and the trustees who held title to certain lands for her benefit. The defendant and counterclaimant is her husband and he appeals from *499 those parts of the judgment below which were adverse to him. It was held that an alleged gift causa mortis was invalid, that he had no curtesy in certain lands of which the deceased was seized during coverture and that he was liable for the expenses of her last illness.
These facts appear from admissions in the pretrial order and from undisputed proofs: Mr. and Mrs. Reiss were married on March 28, 1940; each had a child or children of prior marriages; they separated in 1946 and at that time they held two parcels of land by the entirety, he held two others and she one other in severalty; on August 7, 1946 they signed, sealed and acknowledged a separation agreement which, among other things, provided for the division of the real estate held by the entirety and the conveyance of that and the realty held in severalty to their respective nominees or trustees; pursuant to this and on the same day they conveyed to her daughter and son-in-law, the plaintiffs Julia E. Foster and Leslie Foster, as trustees for her, the parcel of which she was seized in severalty and one of the two parcels held by the entirety; the agreement contained reciprocal release clauses and the one releasing her is as follows:
"9. The said party of the second part does hereby release and discharge, for himself, his heirs, executors and administrators the said party of the first part, her heirs, executors and administrators, of and from all debts, dues, sums of money, accounts, agreements, promises, damages, judgments, executions, claims and demands whatsoever, either in law or in equity, against the party of the first part, which he, the party of the second part, now has or which he ever had, or which he or his heirs, executors or administrators can, shall or may have, in, upon or by reason of any matter, cause or thing whatsoever, by virtue of she being his wife or otherwise.";
the couple were reconciled in 1948 and thereafter cohabited until her death; she entered a hospital in the city of her residence on April 30th, underwent major surgery on May 4th and died at the age of 66 years on May 13, 1951; her will, executed in the year of her marriage, was duly probated; in it she directed the payment of her just debts and funeral expenses, gave $1 to her husband and the residue to her *500 children and grandchild; at her death the Fosters still held title to the aforesaid real estate upon a naked trust for her benefit.
Shortly before the decedent went to the operating room and while her hair was being dressed by Agnes Tekowitz, a friend of many years, a patient and roommate at the moment, she asked the latter for pencil and paper. She then wrote a letter to her husband in her native language, the translation of which is as follows:
"My Dearest Papa:
In the kitchen, in the bottom of the cabinet, where the blue frying pan is, under the wine bottle, there is one hundred dollars. Along side the bed in my bedroom, in the rear drawer of the small table, in the corner of the drawer, where my stockings are, you will find about seventy-five dollars. In my purse there is six dollars, where the coats are. Where the coats are, in a round tin box, on the floor, where the shoes are, there is two hundred dollars. This is Dianna's. Please put it in the bank for her. This is for her schooling.
The Building Loan book is yours, and the Bank book, and also the money that is here. In the red book is my son's and sister's and my brothers address. In the letter box is also my bank book.
Give Margaret my sewing machine and anything else she may want; she deserves it, as she was good to me.
God be with you. God shall watch your steps. Please look out for yourself that you do not go on on a bad road. I cannot stay with you. My will is in the office of the former Lawyer Anekstein, and his successor has it. There you will find out everything. Your Kissing, loving wife,
 Ethel Reiss 1951-5-4.";
the decedent then put the letter in a drawer in her bedside table and asked Mrs. Tekowitz to inform her husband or daughter when they came of the location of the letter and that they should take it. The defendant came to the hospital in the afternoon, was informed of the letter by Mrs. Tekowitz and took possession of it. He testified that on the same day he went to their home, and in the caches described in the letter, found the bank and the building and loan passbooks for accounts standing in her name and the cash, took possession of them and retained them until the trial.
The trial court found present every required element of a gift causa mortis except delivery and held that the attempted *501 gift "cannot be sustained because there was no delivery by the donor to the donee, either actual or symbolical, of the subject matter of the gift."
The respondents contend here that the attempted gift must fail because there was no manual tradition of the passbooks and currency.
A gift causa mortis may be defined as one made in the prospect of the donor's death and upon condition that the property shall belong completely to the donee in the event the donor dies as anticipated, leaving the donee surviving him, and the gift is not in the meantime revoked. 24 Am. Jur., Gifts, sec. 4; Meyers v. Meyers, 99 N.J. Eq. 560 (Ch. 1926); Weiss v. Fenwick, 111 N.J. Eq. 385 (E. & A. 1932).
The essential elements required in a gift causa mortis are the same as those in a gift inter vivos and they are (1) a present donative intention, (2) delivery of the subject of the gift, unless it be a chose in action in which event the delivery must be of that variety of which it is most capable, and (3) the donor must part with all dominion and control over it. Cook v. Lum, 55 N.J.L. 373 (Sup. Ct. 1893); Meyers v. Meyers, supra; Bankers Trust Company v. Bank of Rockville, etc., 114 N.J. Eq. 391 (E. & A. 1933).
Because in gifts causa mortis the disposition is usually oral, and the lips of the donor are sealed when the validity of the gift is challenged, and because of the opportunity, often present, for fraud, mistake and imposition, the safeguards surrounding these gifts are not relaxed. Parker v. Copland, 70 N.J. Eq. 685 (E. & A. 1906).
In Cook v. Lum, supra, Chief Justice Beasley stated that though there can be no actual delivery of choses in action, the surrender of them is deemed equivalent to an actual handing over of things corporeal; that the law concerning the same is neither doubtful nor obscure, but that the difficulty arises in applying the rules to the infinite variety of cases that present themselves for judicial examination; that there is a multitude of decisions which acknowledge the well established rules, but that they are nothing more than interpretations of *502 the facts in each particular case, and it serves no useful purpose to review them in detail in the absence of one that contains facts and circumstances similar to those in the case under consideration; that after an examination of many cases, it is perceived that the principal difficulty has been to decide whether the evidence in hand in the given case showed a delivery of the subject of the gift in a legal point of view. He then goes on to set forth what he calls the crucial test, in the following language:
"But this was a maze not without its clue, for the cardinal principle as to what constituted a delivery that would legalize a gift was on all sides admitted, and was generally applied. The test was this: that the transfer was such that, in conjunction with the donative intention, it completely stripped the donor of his dominion of the thing given, whether that thing was a tangible chattel or a chose in action. The rule does not require that the title of the donee should be formally perfect, although in the earliest decisions this appears to have been indispensable, but now the law is otherwise settled. Thus the delivery with donative intention of nonnegotiable notes or bonds affords an apt illustration of the rule in both of its aspects. Such gifts are admittedly valid, although the title of the donee is not ceremoniously perfect as it wants the finishing touch of a written assignment; but the transaction is validated on the ground that it is possessed of the all-important quality of depriving the donor of all control over the property. After the delivery of such bond or note, the donor can exercise not a single act of ownership with respect to it. He cannot sue upon it nor collect it, nor regain its possession. And it is this absolute abnegation of power that, in a legal point of view, makes the transaction enforceable."
There should be an actual delivery of the subject of the gift, but if that cannot be made the donor may do that which the circumstances will in reason be considered equivalent to an actual delivery. Thus the delivery may be constructive or symbolical and in these cases the delivery should be as complete as the nature of the property and the surrounding circumstances will allow. Delivery of a chose in action without assignment is regarded as valid, where there is, for instance, in the case of a bank account the delivery of a passbook. Van Wagenen v. Bonnot, 72 N.J. Eq. 143 (Ch. 1906); Laing v. Durand, 84 N.J. Eq. 404 (Ch. 1915); *503 Hinchliffe v. Kastner, 1 N.J. Super. 495 (Ch. Div. 1948); Hoey v. Dell, 10 N.J. Super. 185 (App. Div. 1950).
In the court below and upon the argument here, great stress was placed upon the determination in Keepers v. Fidelity Title & Deposit Co., 56 N.J.L. 302 (E. & A. 1893), where it was held that an attempted gift causa mortis of the contents of a box was invalid. There the donor on her deathbed asked her mother to bring to her from a bureau drawer a handkerchief which had various small items collected in it. She asked her mother to leave the room and when she had done so, she opened the handkerchief which contained some jewelry and a small key. She told her sister that the key was for a box and that she was giving her all that it contained. She then returned the key to the handkerchief and turned it and the contents over to the donee. It appeared that the key fitted a box which was in another room in the same house, locked in a closet of which the donor's mother had the key, and that this box contained a bankbook, a stock certificate and bonds of the donor. During the donor's lifetime, the donee never asked her mother for the key of the closet, nor made any attempt to assume control over or to take possession of the box or its contents, and neither the box nor its contents ever came into her possession. It is obvious on these facts that the delivery was not as nearly perfect and complete as the nature of the property and the circumstances would permit. The donor might just as readily have asked her mother to produce the box in question as it was to have her bring the handkerchief which contained the key. Another case relied upon by the plaintiffs is Pfeifer v. Badenhop, 86 N.J.L. 492 (Sup. Ct. 1914), where it was held that an attempted gift causa mortis of a bank deposit failed because of an invalid delivery. There the donor shortly before her death signed a draft upon her savings bank account and made the statement that if she died she wanted the balance in the account to go to her parents. The requirement of the bank was that no withdrawal could be made without the presentation of the deposit book. *504 The court held that failure to deliver the book to the donee was fatal.
It is well settled that delivery of the subject of a gift to a third party for transmission to the beneficiary is good. Laing v. Durand, supra; Meyers v. Meyers, supra; Buchman v. Smith, 140 N.J. Eq. 390 (E. & A. 1947); Crystal v. Joerg, 16 N.J. Super. 514, 519 (Ch. Div. 1951).
Where there is a deed of gift, there is no requirement for delivery of the subject of the gift, because of the solemnity of the execution and the security and definiteness that arise from the writing itself. Tarbox v. Grant, 56 N.J. Eq. 199 (Ch. 1898).
There are many reported cases in which gifts were made or attempted to be made by informal writings. These of course do not have the force or effect of deeds, but they are more certain and persuasive proof of a gift than mere oral statements. In McGavic v. Cossum, 72 App. Div. 35, 76 N.Y.S. 305 (1902), it was held that where an ill donor, who owned certain bonds then in the custody of his bank, wrote on the original memorandum of purchase of these bonds, "`I have this day given my niece, Fannie H. McGavic, bond $2,000, Reg. 4 per cent'" and delivered the memorandum to the donee, that there was a good constructive delivery of the bonds. The same court held that where there was delivery to the donee of an informal writing for the gift of 500 shares of stock held by a partnership of which the donor was a member and which shares were still in the partnership name and in its safe deposit box that the gift was good. In re Cohn, 187 App. Div. 392, 176 N.Y.S. 225 (1919).
In Hawkins v. Union Trust Company, 187 App. Div. 472, 175 N.Y.S. 694, in a letter delivered by the donor to the mother of the donee and by her to the donee, this language appeared, "`You will remember this is my birthday. In celebration of this fact, I give you my boat.'" At the time the boat was in storage and could not be delivered. It was held to be a valid gift.
*505 In Hillary Holding Corporation v. Brooklyn Jockey Club, 88 N.Y.S.2d 198 (Sup. Ct. 1949), it was held that the transmittal of a letter of gift constituted a valid delivery of shares of stock described therein.
Waite v. Grubbe, 43 Or. 406, 73 Pac. 206 (Sup. Ct. 1903), is an interesting case in which the delivery was held to be good and the gift valid. There an aged man in ill health told his daughter that he had $10,000 in gold coin buried in various places on his farm and that he was giving the same to her. On the following day he took her to the farm and pointed specifically to several locations where the coin was buried. He told her for safety to leave the money there until the place was rented or until she needed it. The donor alone knew the location of the coin before the discussion with his daughter. At the time he was too ill to dig it up. Thereafter she went to the places designated, excavated the treasure and reduced it to possession. It was held that the delivery was as complete as the circumstances of the case would permit.
No case has been presented to us from this State or elsewhere that is exactly in point. It is our duty to apply the rules with a view to finding for certain whether or not there has been a completed gift. It is undisputed here that the decedent was mentally competent, that there was no imposition upon her, that no one importuned her to make a gift, that she acted spontaneously, that shortly before going to the operating room she wrote a letter in her own hand and arranged that her husband or daughter should receive it. This letter is conceded to be proof of a present donative intent. However, it not only clearly evidences such an intent but in a most detailed way it directs the defendant to caches in the home of her husband and herself. It was delivered to him a few hours after it was written and on the same day by virtue of it he took possession of the bankbook, the building and loan book and the currency, and retained the same down to the time of trial. The wife died nine days later. In the meantime she never left her deathbed and there *506 was no revocation. The writing here is not a deed nor an instrument under seal. It is informal, but under the circumstances it is very strong and convincing proof not only of the donative intent but of the constructive delivery of the objects referred to therein. It was written from her deathbed when an operation was impending and when she was unable to put her hands on the subject of the proposed gift. The writing itself and the testimony of Mrs. Tekowitz regarding its delivery constitute persuasive and reliable proof of the essential elements of a gift. The directions to the caches in the donee's home effectively put him in possession on the same day and stripped her of dominion and control.
What basis is there for doubt about a gift here? The donor utilized the best means available to her. The delivery was as nearly perfect and complete as the nature of the property and the attending circumstances would permit; and though the physical transmittal was not by her hand nor in her sight, by her writing and its delivery she effectively stripped herself of dominion.
Upon the argument, the plaintiffs suggested that delivery would be complete in this case only if the husband had gone to the home, taken possession of the passbooks and currency, returned them to his wife, and then had a manual transmittal of them from her. It is generally held that where a donee already has possession of the subject matter, further delivery of it is not essential to the constitution of a valid gift. Anent this, it was said in Champney v. Blanchard, 39 N.Y. 111 (1868),
"Delivery of the subject matter is, no doubt, essential to a gift either inter vivos or causa mortis; but the object of delivery is to get possession, and, in this case possession was already in the donee. No further delivery was necessary, nor was it possible, without first returning the property to the donor that it might be delivered to the donee  an idle and unmeaning ceremony."
In re Gordon's Will, 238 Iowa 580, 27 N.W.2d 900 (Sup. Ct. Iowa, 1947), is a case where a nephew was holding *507 money in safekeeping for an elderly aunt; she wrote and told him upon her death to divide the money among his brothers, sisters and himself. It was held there was a good delivery because it was not essential that the money should be returned to the donor and then re-delivered.
In Caylor v. Caylor's Estate, 22 Ind. App. 666, 52 N.E. 465 (App. Ct. Ind. 1898), a wife on her deathbed told her husband that all her property in his possession should go to her nephew on her death. This was held to be good delivery of a gift causa mortis. The court there said:
"While every case must be brought within the general rule that, to constitute a valid gift causa mortis, there must be a delivery of the property or thing given to the donee, or to a third person for his use and benefit, yet, as the circumstances under which such gifts are made must of necessity be varied and infinite, the courts must determine each case upon its own peculiar facts and circumstances."
These cases are cited because upon the delivery of the letter in question the husband was immediately in a position to take possession of the subject of the gift, and he did so in fact. Under the circumstances present here it would have been idle and strange if he took the subject matter of the gift to the hospital for re-delivery to him.
Upon the delivery of the letter to the defendant here, the donor in effect surrendered possession and control and there was nothing more to be done by her to complete the gift to her husband.
We concur in the conclusion of the trial court that paragraph nine, the release clause in the separation agreement, together with the simultaneously executed deeds by the decedent and the defendant to the trustees for her benefit divested him of his right of curtesy. That part of the agreement whereby the parties undertook to relinquish their respective rights of dower and curtesy was fully executed and not affected by their subsequent reconciliation. The defendant effectively relinquished his curtesy in the lands in question. Havranek v. Dragoun, 1 N.J. Super. 386 (Ch. Div. 1948); Cf. Hampton v. Hampton Holding Co., 31 N.J. *508 Super. 80 (App. Div. 1954); R.S. 37:2-18, N.J.S.A., as amended in 1950 and R.S. 37:2-18.1, N.J.S.A., enacted in 1953.
In her will the decedent directed that her representatives should pay her debts and funeral expenses. She did not order that the expenses of her last illness should be so paid. Such expenses are primarily the obligation of a husband. DeLisle v. Reeves, 96 N.J. Eq. 416 (E. & A. 1924). We agree with the conclusion of the court below that they did not constitute a debt of the wife and that the defendant is liable for their payment.
The judgment below, in so far as it relates to the gift causa mortis is reversed; the defendant shall have judgment that title to the accounts in People's National Bank and Magyar Building & Loan Association, and the currency amounting to $381 is in him; the judgment, as so modified, is affirmed.