153 N.J. Super. 521 (1976)
380 A.2d 704
ROBERT SCHERER, PLAINTIFF-RESPONDENT,
v.
ROBBERT HYLAND, ADMINISTRATOR OF THE ESTATE OF CATHERINE WAGNER, DECEASED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 1976.
Decided April 21, 1976.
*523 Before Judges ALLCORN, KOLE and ARD.
Mr. Herbert M. Barnes, attorney for appellant.
Messrs. Tumarkin & Nicolette, attorneys for respondent (Mr. David A. Nicolette, of counsel and on the brief; Mr. Robert J. Rudy, Jr., on the brief).
PER CURIAM.
Defendant, administrator of the estate of Catherine Wagner (hereafter "Wagner"), deceased, appeals from a summary judgment entered in favor of plaintiff Robert Scherer declaring that Wagner had made a valid gift causa mortis to plaintiff of a $17,400 check, its proceeds and the interest thereon. The court also denied defendant's motion for summary judgment.
The undisputed facts in the record before us and the court below, including affidavits, police reports and depositions, follow.
On January 23, 1974, the date of her death, Wagner, age 58, and plaintiff, age 65, had lived together for about 15 years. They resided in an apartment leased by plaintiff for which he paid the rent.[1] They were not married, since plaintiff had a wife from whom he was separated, although not *524 through any legal proceedings. Plaintiff and Wagner both worked, earned incomes and shared the household chores and expenses.
In 1970 Wagner was involved in an automobile accident, apparently in Pennsylvania. Plaintiff was driving the auto in which she was injured. As a result of this accident, Wagner's hip was broken and she received facial wounds. Soon thereafter she was unable fully to perform her household responsibilities, to return to work or to earn any income. Plaintiff assisted her both physically and financially in these respects. As a result of a settlement from this automobile accident, Wagner was to receive $17,400. While she attempted to function to the best of her ability, she was dissatisfied with her condition and on January 9, 1974, two weeks prior to her death, unsuccessfully attempted suicide by slashing her wrists.
On January 23, 1974, she received the $17,400 settlement check. She was the payee. The drawer was Michael Shehadi, a Pennsylvania attorney who represented her in the accident claim. She had her own savings and checking accounts. She and plaintiff had no joint bank accounts. At approximately 11:30 A.M. that day, plaintiff telephoned Wagner from work. He noticed nothing unusual in her voice or behavior during the telephone call. She informed him that she had received the check and that either (1) they would purchase a certificate of deposit in both their names the next day at the bank or (2) he should not then come home to deposit it but he should "wait until tomorrow" to make the deposit. Both of these versions of this conversation were given by plaintiff. They are not necessarily inconsistent; but even if they are, such inconsistency, in view of the other written evidence of Wagner's donative intention, is of no significance on the issue of delivery here involved. Whichever statement was then made by her, it is plain that she later had concluded to make a gift of the whole check and its proceeds to plaintiff.
*525 Thereafter on the same date she prepared two handwritten notes. One note read as follows:
To Whom it May Concern:
I bequeath all my possessions to Robert Scherer. These include the check for $17,400.00 from Michael R. Shehadi. My checking account, a savings account, both at First National Bank, Kearny. The money in Otis Elevator Credit Union and all other residue of my estate including insurance. Bob has taken good care of me all these years and has spent much money on me. He deserves everything I have.
 /s/ Catherine E. Wagner
The other note written to the plaintiff, reads as follows:
Dearest Bob,
Forgive me for taking the easy way out. I love you and hate myself for leaving you with such a mess. But I can't cope with the problems about of me. I am sick all the time and can't do anything in the house or for myself anymore. Everything seems so unsurmountable.
My body has become so fat and misshaped. I don't think I can ____________________________________________________ __________________.
You will probably need a lawyer to get the financial business straightened out. I hope you get something out of it all. I trust you will find a decent future with your family and find happiness again. God take care of you.
May the Lord forgive me.
 Love to you darling
 /s/ Catherine
 You were so good
 and kind to me (over)
 always
On the reverse side of this note to plaintiff decedent wrote:
I hope my family will also forgive me for bringing this disgrace on them. They were always ____ kind and loving. I love them too.
Wagner endorsed the $17,400 check in blank. She placed this check, together with the foregoing two notes, on the kitchen table in the apartment. She then left the apartment, *526 locked the door behind her, went to the roof of the apartment building and jumped to her death at approximately 3:25 P.M. She died intestate.
Members of the Kearny Police Department responded and found her dead on the sidewalk. In the course of their investigation the police asked the superintendent of the building to unlock the apartment. The police entered the apartment and found the check and two suicide notes on the kitchen table. These items were brought to police headquarters. By telephone the police informed plaintiff at work of what had occurred. Thereafter, plaintiff was told of the check and the notes, although he never received possession of them.
Even if we disregard defendant's concession in the court below that there were no genuine issues of material fact, we are satisfied that, giving him the benefit of all of the facts and inferences therefrom in the record, there were no such factual issues and the summary judgment in favor of plaintiff was properly granted. Judson v. People's Bank & Trust Co. of Westfield, 17 N.J. 67 (1954); R. 4:46-2.
We are, of course, governed by the rigid standards established by Foster v. Reiss, 18 N.J. 41 (1955) for delivery with respect to gifts causa mortis and its statement as to the disfavor with which such gifts are held, since they constitute a "dangerous encroachment upon the policy embodied in the statute of wills." Id. at 53.
Irrespective of whether in a gift causa mortis the property is considered as remaining in the donor until death or the transfer is absolute but defeasible before death, among other things, delivery of the property to the donee prior to the donor's death is essential before such a gift may be found. Foster v. Reiss, supra.
There is no doubt that all of the requisites of a gift causa mortis exist in the present case. The gift of the check endorsed in blank by the deceased payee was made in view of her impending death, she died "of the disorder or peril", she was competent to make the gift, there was an intent on her *527 part to do so and there was an acceptance of the gift by the donee in the sense that the delivery to him of the endorsed check was such as was "actual, unequivocal and complete during the lifetime of the donor, wholly divesting" her "of the possession, dominion and control thereof." Weiss v. Fenwick, 111 N.J. Eq. 385, 388 (E. & A. 1932). This requirement as to delivery "is satisfied only by delivery by the donor, which calls for an affirmative act on her part, not by the mere taking of possession of the property by the donee." Foster v. Reiss, supra, 18 N.J. at 50-51.
The property in the instant case was a negotiable instrument  a check in which the donor was the payee  that was negotiable or transferable by her by endorsement while living, provided the attendant circumstances plainly established a transfer or delivery thereof to the donee. A check or promissory note drawn or executed by a purported donor may not be the subject of a gift. However, where the negotiable instrument is one in which the donor is the payee, the necessary delivery thereof during her lifetime may be made by (1) manual or actual delivery to the donee with or without endorsement or (2) by endorsement in a factual setting which, as here, manifestly leads to the conclusion that the instrument was so delivered to the donee. See Fidelity Union Trust Co. v. Tezyk, 140 N.J. Eq. 474, 477 (E. & A. 1947); Weiss v. Fenwick, supra, 111 N.J. Eq. at 390; Farrell v. Passaic Water Co., 82 N.J. Eq. 97 (Ch. 1913); Corle v. Monkhouse, 50 N.J. Eq. 537, 545 (Ch. 1892). See also Voorhees v. Executors of Woodhull, 33 N.J.L. 494, 498 (E. & A. 1869); In re Brueck, 122 N.J. Eq. 329, 330 (Prerog. Ct. 1937), mod. on other gds. 124 N.J. Eq. 62 (E. & A. 1938).[2]
*528 Title  i.e., the ownership rights  to a negotiable instrument generally does not pass, as between the immediate parties, until there is a manual tradition or actual authorized delivery thereof. But where a negotiable instrument is no longer in the possession of a person whose signature appears thereon, a valid and intentional delivery by that person is presumed until the contrary is proven. See Manna v. Pirozzi, 44 N.J. Super. 227, 236 (App. Div. 1957); Storm v. Hansen, 41 N.J. Super. 249, 255 (App. Div. 1956). See also First National Bank of Philadelphia v. Stoneley, 111 N.J.L. 519, 524 (E. & A. 1933); N.J.S.A. 12A:3-201. Compare "negotiation", N.J.S.A. 12A:3-202; Corle v. Monkhouse, supra.
The following undisputed proofs raise the presumption of a valid and intentional delivery of the check to plaintiff by Wagner before her death, which has not been rebutted. After informing plaintiff by telephone on the day of her death that the check would be deposited the next day, she endorsed it in blank; placed it on the kitchen table with the two written notes plainly evidencing an intent to give it to plaintiff, who occupied the apartment with her and who she obviously expected would find it where she had placed it when he returned to their apartment; locked the apartment door after leaving it without any expectation of returning to the apartment, and went to the roof and committed suicide. These acts with respect to this instrument owned by decedent clearly established a "`transfer * * * in conjunction with the donative intention * * * [that] completely stripped the donor of [her] * * * dominion'" of the negotiable check to her order in favor of the donee, the plaintiff. Foster v. Reiss, supra, 18 N.J. at 50. See and compare Parker v. Mott, 181 N.C. 435, 107 S.E. 500, 25 A.L.R. 637 (1921); Annotation, "Delivery of bill or note of third person by way of gift", 25 A.L.R. 642.
On the record before us, we are satisfied that the risks inherent in a finding of a gift causa mortis, referred to in Foster v. Reiss, supra, 18 N.J. at 53-54, are not present.
*529 Defendant now presents for the first time, without having raised it below, the issue of decedent's competency to have made the gift in view of her suicide and her suicide attempt two weeks before her death. The matter is not properly before us. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229 (1973); State v. Sidoti, 120 N.J. Super. 208 (App. Div. 1972). In any event, we are satisfied from our own review of the record, including the evidence relating to both the January 9 and January 23, 1974 suicide incidents, that none of the proofs presented raises a factual issue as to her lack of mental capacity when she made the gift of the check. See Conners v. Murphy, 100 N.J. Eq. 280, 282 (E. & A. 1926); In re Rein, 139 N.J. Eq. 122, 130 (Prerog. Ct. 1946). See also Berl v. Rosenberg, 169 Cal. App. 2d 125, 336 P.2d 975 (Dist. Ct. of Apps. 1959); In re Van Wormer's Estate, 255 Mich. 399, 238 N.W. 210 (1931); Page on Wills (3 ed.), § 7.33, at 338.
Defendant contends that whether or not plaintiff was entitled to the check as repayment for services rendered and funds advanced was not a matter for a summary judgment. This question, involving an alternate claimed basis for relief by plaintiff, was not decided below, is not before us on appeal, and is rendered moot by the determination as to the gift causa mortis.
Affirmed.
ALLCORN, J.A.D. (dissenting).
Quite obviously, there here was no delivery of the check prior to the death of the decedent  and thus there was no completed gift, inter vivos or causa mortis. Foster v. Reiss, 18 N.J. 41 (1955); Weiss v. Fenwick, 111 N.J. Eq. 385 (E. & A. 1932).
The single fact that the decedent decided to make the attempt on her life before delivering the check to the plaintiff does not transform an intention into a completed gift  any more than her written and signed declaration purporting to dispose of her estate constituted a valid Will, in the absence *530 of execution or acknowledgement in the presence of at least two witnesses and their accordant attestation, pursuant to N.J.S.A. 3A:3-2. Id.
For the foregoing reasons, I would reverse the judgment of the Chancery Division.
NOTES
[1] We do not consider the fact that plaintiff leased the apartment and paid the rent therefor as significant in our determination. Wagner and plaintiff both occupied the apartment and had keys therefor.
[2] Whether the police or plaintiff arrived first at the apartment and took possession of the check is immaterial to the question of whether a valid delivery thereof to plaintiff has been made. To be effective such delivery had to be accomplished before the death of the donor  Wagner.