214 N.J. Super. 586 (1987)
520 A.2d 798
IN THE MATTER OF THE ESTATE OF HARRY SIEGEL, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1986.
Decided January 12, 1987.
*587 Before Judges BILDER, GAYNOR and SCALERA.
Joseph A. Hallock argued the cause for appellant (Lum, Hoens, Abeles, Conant & Danzis, attorneys; Charles H. Hoens, Jr., of counsel; Stephen T. Golia, on the brief).
Joe E. Strauss argued the cause for respondent (Reed, Strauss & Tauriello, attorneys; (Mindy S. Goldberg on the brief; Joe E. Strauss, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
*588 This is an appeal from a judgment admitting a holographic will to probate. In challenging this determination of the trial court, appellants contend the alleged will is not a valid holographic will under N.J.S.A. 3B:3-3 as the deceased failed to sign the instrument and the document was never completed or pages had been omitted from the document as originally prepared.
The facts giving rise to this proceeding are not in dispute. The decedent died on May 4, 1985, a resident of East Amwell Township, Hunterdon County. He was survived by two sisters, Ida Goldband and Pauline Bellen, and three children of a deceased brother, Marcia Neuhauser, Betty Siegel and Sol Siegel. Betty Siegel is totally incapacitated and confined to a nursing home under the guardianship of her brother. Because of his poor health, decedent had been residing with Marcia Neuhauser and being cared for by her for approximately nine months prior to his death. When decedent had been very ill and hospitalized he summoned Mrs. Neuhauser and informed her that he had written his own will in which he had provided that his estate be divided equally between his sisters, Ida and Pauline, his nephew Sol, and his niece, Marcia. Decedent was then aware of Betty's incompetency and her consequent confinement but he expressed no interest in including her, or any other person, as a beneficiary of his estate.
When Mrs. Neuhauser was examining the contents of the East Amwell residence after Mr. Siegel's death, she found the purported will. It was written on the last page of a writing tablet which had been placed, together with the ownership certificate of decedent's automobile and family pictures, in between pages of an old book. The alleged will was a handwritten document consisting of a title sentence and three paragraphs. It is undisputed that the handwriting was that of the decedent. The title sentence included decedent's name and the first paragraph introduced the decedent and again reproduced *589 his name. This paragraph also stated his place of residence and declared the document to be his last will and testament. In the next paragraph, his executrix "hereinafter named" was directed to pay his debts and funeral expenses. The last paragraph devised and bequeathed "all the rest and residue of my estate ... in equal shares, to my sisters, Ida London, Pauline Bellen, and my nephew Sol Siegel, my niece Marcia Neuhauser".[1] There was no punctuation mark at the end of this paragraph.
In September 1985 Mrs. Neuhauser filed the complaint herein for the probate of decedent's holographic will and appointment as Administratrix of the estate with the will annexed. Renunciations in favor of Mrs. Neuhauser had been executed by Ida Goldband and Pauline Bellen. Pursuant to an Order to Show Cause, the probate application was the subject of a hearing before the trial court. Children of Mrs. Goldband and Mrs. Bellen appeared and objected to the probate of the holographic will pending the family's discussion of the matter and decision as to a position. Following are pertinent portions of the colloguy which took place between the court and Seymour London, son of Ida Goldband, at this proceeding:
THE COURT: Well, you know of no legal objections that you have at this point to the holographic will, I take it.
THE WITNESS: I have not  I am not conversant with the laws of New Jersey.
No, I have no objections at this point.
However, I would like to reserve whatever rights we may have to file any responsive pleadings in this respect if they become necessary, or seek counsel in this respect if it become necessary.
* * * * * * * *
THE COURT: Well, how much time  you indicate that you would like some time to discuss it among the various beneficiaries here.
THE WITNESS: Yes.
THE COURT: Or heirs.

*590 How much time are you going to need to determine 
THE WITNESS: One week to ten days, Judge, at the very best. Just enough time to apprise my mother of the situation and indicate what  what, if any action she would like to take.
* * * * * * * *
THE COURT: The Court will appoint Mrs. Neuhauser as the administratrix. But the final letters of administration will not be issued until December thirteenth.
We will set this matter down for December thirteenth, which is a Friday, at which time if you have  want to be represented by counsel or have any objections, you can present them at that time.
THE WITNESS: All right.
* * * * * * * *
THE COURT: I would assume that in the absence of anyone being here, any of the beneficiaries, that you have no specific objection other than that which you have already voiced.
THE WITNESS: That's what I was going to ask the Court.
If at all possible, if there are any objections, because it is an expensive proposition flying back and forth, that our objections be submitted in writing, if such be the case, I don't know, and have the Court just rule on them in writing. Unless the Court feels it necessary to take any testimony at a later time.
THE COURT: Well, I would like to see what is in writing first.
THE WITNESS: Sure.
THE COURT: Then I would then determine whether or not any testimony would have to be taken.
THE WITNESS: Fine. Okay.
THE COURT: Certainly you may submit to the Surrogate, who will in turn submit to me, any writings that you want with respect to this matter.
THE WITNESS: Fine.
Neither Mrs. Goldband nor Mrs. Bellen, or anyone representing them, appeared on the continued date nor had any written objection to the probate been submitted by them or on their behalf. Accordingly, based upon the testimony previously offered, the court thereupon entered judgment admitting the will to probate and appointing Mrs. Neuhauser as Administratrix C.T.A.
On this appeal, the sisters of decedent claim that probate was improvidently granted as the purported will assertedly is not a properly executed holographic will. It is contended that, although the decedent wrote his name in the title and introductory *591 clauses of the document, there is no indication that the decedent intended that his name in either place act as his signature to the will. Rather, appellants state that the name of decedent in both of these places was to serve only for the purpose of description and form. Additionally, appellants argue that the incompleteness of the document admitted to probate demonstrates that its admission to probate was error. As a testator's intent can be discerned only from a consideration of his entire will, the probate of an instrument which allegedly on its face disclosed its incompleteness is not only inequitable to the interested parties but also unsafe, as the missing provisions may likely modify those which are discernible. In our view, these contentions are without merit.
Preliminarily, we consider appellants standing to challenge the judgment of the trial court, an issue which has not been addressed by either of the parties. Our reading of the record indicates that neither Mrs. Goldband nor Mrs. Bellen, the persons whose interest in the estate was affected by the probate of the holographic will, appeared personally or through counsel in response to the Order to Show Cause. Furthermore, no objection was voiced by these interested parties on the continued date of the hearing, either personally or in writing, to the admission of the subject document to probate as the will of decedent. Thus, appellants effectively defaulted and by reason thereof have no standing to appeal from the judgment entered upon their default. See Breidenbach v. Breidenbach, 130 N.J. Eq. 214 (E. & A. 1941); Townsend v. Smith, 12 N.J. Eq. 350 (E. & A. 1858). The reason for this rule is obvious and needs no discussion.
While this appeal might well be dismissed on this procedural lack of standing, we have considered the matter on its merits and concur with the trial judge's decision to admit the document to probate as the holographic will of the decedent. The pertinent statute, N.J.S.A. 3B:3-3 provides as follows:

*592 A will which does not comply with N.J.S.A. 3B:3-2 is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator.
Two requirements for a valid holographic will are established by the statute. First, the material provisions must be in the handwriting of the testator and secondly, the document must be signed by him. Matter of Will of Marinus, 201 N.J. Super. 329, 343 (App.Div. 1985), certif. den. 101 N.J. 332 (1985). As indicated, there is no dispute that the first requirement has been met. While the alleged will of decedent does not contain a signature at the end of the document, the writing of his name in the title and introductory paragraphs of the instrument may be accepted as his signature if intended as such by the testator. See In re Estate of Cunningham, 198 N.J. Super. 484, 489 (Law Div. 1984); In re Phelan Estate, 82 N.J. Eq. 316, 319 (Prerog.Ct. 1913), aff'd o.b. 82 N.J. Eq. 647 (E. & A. 1914).
In construing a testamentary instrument, reliance is to be placed not only on the terms of the purported will but also on other relevant circumstances including the testator's own expressions of intent. Engle v. Siegel, 74 N.J. 287, 291 (1977). Circumstances subsequent to the execution of the purported will likewise are relevant to the matter of the testator's intent. See In re Cook, 44 N.J. 1, 6 (1965). Application of these principles to the present situation compels the conclusion, in our view, that there is sufficient evidentiary basis for a finding that the testator's writing of his name in the prefatory paragraphs of the will was intended as his signature. The document itself expressed a testamentary intent in fully disposing of the testator's property. Such intent, as garnered from the contents of the document, was corroborated by testimony of Mrs. Neuhauser as to the declarations of the testator that he had written his will and the disposition of his estate which he had made therein.
Further, we are unpersuaded by appellants' challenge to the probate of the offered will on the ground that the document is incomplete and therefore does not reflect the complete testamentary intent of the testator. This contention overlooks or *593 misconstrues the plain meaning of that which was written by the testator. In devising and bequeathing "all the rest and residue of my estate" to named beneficiaries, the testator clearly expressed his intent to thus completely dispose of his property. Appellant's suggestion that a continuation of the will might have conditioned this complete disposition upon a trust or other contingency is pure speculation having no basis in fact or reason. Although the document fails to include a paragraph naming an executrix, or provisions setting forth the powers of a fiduciary or other "boiler plate" language, this absence does not impact upon the testamentary disposition and thus does not require that probate be denied. See In re Will of Smith, 209 N.J. Super. 356 (App.Div. 1986); In Matter of the Will of Cohen, 200 N.J. Super. 538 (App.Div. 1985); Estate of Hall, 118 Misc.2d 1052, 462 N.Y.S.2d 154 (Sur.Ct. 1983). An instrument, although unfinished, is of testamentary character if it expresses the whole will of the testator as far as it goes. See 94 C.J.S. Wills § 159 at 949-950 (1956). Clearly, the writing offered as the last will and testament of Mr. Siegel, although incomplete in some respects, embodied his testamentary intention and was properly admitted to probate as his holographic will.
The judgment dated January 15, 1986 is affirmed.
NOTES
[1] Ida Goldband, a sister of decedent had been known as Ida London until approximately January 1980 or 1981.