775 A.2d 716 (2001)
342 N.J. Super. 65
Annabelle CRIPPEN, Administratrix ad Prosequendum and General Administratrix of the Estate of Harold Crippen, Deceased, Plaintiff-Appellant,
v.
CENTRAL JERSEY CONCRETE PIPE COMPANY, and Gallo Industries, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 2001.
Decided July 5, 2001.
*717 Robert G. Hicks, Springfield, argued the cause for appellant (Javerbaum Wurgaft Hicks & Zarin, attorneys; Mr. Hicks, on the brief).
Michael J. Marone, Morristown, argued the cause for respondents (McElroy, Deutsch & Mulvaney, attorneys; Mr. Marone, of counsel; William T. McElroy, on the brief).
Before Judges PETRELLA and BAIME.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Annabelle Crippen, the widow of decedent Harold Crippen, appeals from the entry of summary judgment in the Law Division in favor of defendants Central Jersey Concrete Pipe Company (Concrete Pipe) and Gallo Industries, Inc. (Gallo) (allegedly Concrete Pipe's parent company). The central issue on appeal is whether defendants' knowledge of and failure to remedy unsafe working conditions previously cited by the Occupational Safety and Health Administration (OSHA) constitutes an intentional wrong under N.J.S.A. 34:15-8, such that plaintiff may bring an action in tort for the death of her husband. Additionally, plaintiff claims that the judge erred in granting summary judgment prior to the completion of discovery.
Plaintiff's complaint alleged that (1) Concrete Pipe's willful, wanton, reckless, negligent and careless actions permitted a dangerous condition to exist at the plant contrary to OSHA's directive, and that dangerous condition proximately caused Crippen's accidental death in the workplace (count one); and (2) the equipment *718 used by Crippen in the course of his duties was defective (count two).
Concrete Pipe moved for summary judgment on count one, arguing that plaintiff's claim was barred under N.J.S.A. 34:15-8, the exclusive remedy provision of the Worker's Compensation Act. Plaintiff conceded that her negligence claims were barred, but argued that Concrete Pipe's willful and wanton failure to abate violations cited by OSHA constituted an intentional wrong not barred under N.J.S.A. 34:15-8. Plaintiff further argued that the matter was not ripe for summary judgment because discovery was not complete and OSHA had not released its complete investigation report.
The judge granted summary judgment in favor of Concrete Pipe, ruling that further discovery was not necessary to resolve the matter because, even assuming Concrete Pipe lied to OSHA by representing that it was taking steps to rectify the safety problem after the 1997 citation, the injury was not intentional, and thus, not actionable.
Discovery continued as to count two of the complaint. Plaintiff ultimately received the complete OSHA investigation report. That report and the subsequent deposition of Charles Mason, Concrete Pipe's Safety Director, indicated that Concrete Pipe had misled OSHA and failed to implement corrective measures required by OSHA to abate earlier violations. Based on this information, plaintiff sought leave to file an amended complaint adding Mason as well as other companies allegedly owned by Gallo as defendants, and including a third count which essentially restated the allegations of the first count on which the judge previously granted summary judgment. The judge denied the motion, holding that there was no viable cause of action against Mason or other Gallo owned companies.[1] This appeal followed.

I.
The salient facts are viewed in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). As the name implies, Concrete Pipe manufactures concrete pipes. Sand and gravel are transported to the plant by truck and dumped into two separate holding bins at ground level. The bins are moved by conveyor belt to an elevator which then carries them over the "change-over" room, an elevated shed containing the material hopper. The sand and gravel are dumped from the elevator into the material hopper.
The material hopper is described as a giant funnel divided into three sections, one containing sand and two containing gravel. The hopper is about seventeen feet deep and each section is approximately eight by ten feet and contains approximately fifty tons of material. From the hopper the sand and gravel flow down chutes to the mixing room, where workers control the flow of materials from the chutes and weigh them before they are mixed into concrete.
The flow of material from the elevator/conveyor belt into the appropriate section of the hopper is manually controlled by a lever in the change-over room. The "material man" accesses the change-over room by a ladder attached to the exterior of the facility and an exterior catwalk with no midrail. Once inside the change-over room, the material man must cross a two by ten inch wooden plank of unspecified *719 length over the material hopper and then climb a five foot step ladder resting in the closed position to reach the lever about three feet above the top of the ladder.
On June 6, 1998, Harold Crippen was performing the job of material man at the plant. He was last seen at approximately 9:15 a.m. climbing the exterior ladder to the change-over room. At approximately 10 a.m. an employee in the mixing room releasing sand from the sand hopper chute noticed that the chute appeared to be clogged. When he investigated, he discovered that Crippen was in the sand hopper and clogged the chute when the employee released the sand. Crippen was eventually freed through the eleven by eighteen inch opening of the chute. Police and emergency assistance administered CPR, but Crippen was pronounced dead at the scene. The medical examiner later determined that Crippen suffocated while buried in the sand and his death was accidental.
The New Jersey Fatality Assessment & Control Evaluation Project (FACE) of the Department of Health & Senior Services subsequently investigated Crippen's death. The FACE report identified the change-over room as a permit-required confined space under 29 C.F.R. 1910.146 due to the risk that employees could become engulfed in sand or gravel in the material hopper and recommended that the company "develop, implement, and enforce a permit-required confined space entry program." In making the recommendation, FACE noted that prior to Crippen's death OSHA had cited Concrete Pipe for not having a permit-required confined space entry program.
OSHA officials inspected Concrete Pipe from September 27, 1996 to November 5, 1996, and issued a January 16, 1997 citation. In addition to various other serious violations OSHA cited Concrete Pipe for failing to identify permit required confined spaces under 29 C.F.R. 1910.146(c)(1): failing to design and implement a permit required confined space entry program to protect employees entering permit required confined spaces under 29 C.F.R. 1910.146(c)(4); and failing to develop lockout/tag-out procedures to de-energize equipment prior to maintenance, permit space entries, etc., pursuant to 29 C.F.R. 147(c)(4)(i). OSHA ordered Concrete Pipe to abate the violations by February 18, 1997. On March 14 Mason, Concrete Pipe's Security Director, submitted his permit required confined space entry program and a lockout/tag-out program to OSHA stating it would be implemented on March 13, 1997.
After Crippen's death, OSHA inspected the plant between June 6 and November 18, 1998, and issued a citation for failing to provide a railing along the plank over the material hopper. Concrete Pipe was also cited for failing to secure the five foot stepladder used by the material man to reach the lever. Additionally, OSHA cited Concrete Pipe for failure to abate certain of the previous violations noted in its 1996 plant inspection and for failure to establish and implement a permit required confined space entry program.
OSHA's investigation into Crippen's death revealed that while Concrete Pipe's confined space entry program and lockout/tag-out program met OSHA standards, Concrete Pipe's efforts at implementation were minimal at best.[2] Both programs required proper training of all employees at risk, but Concrete Pipe only provided *720 training to five foremen, and that training was deemed insufficient.
There was no effort to issue permits to employees allowed access to the confined spaces or to restrict access to those spaces. Moreover, Concrete Pipe did not identify and post a list of permit required spaces or specific entry procedures for such spaces. The confined space entry plan was submitted to OSHA, but was not provided to employees. Moreover, confined space permit required, warning signs were printed, but were not posted. Concrete Pipe also did not provide rescue and emergency equipment such as a harness or lifeline, in confined space areas. In addition, Concrete Pipe contracted with a rescue service that only provided transport service, and did not provide rescue service to the confined space areas. Thus, actual implementation of the program was limited to inadequate training of five foremen.
The change-over room containing the hopper was a confined space that would require a permit under the plan. However, Crippen was not required to furnish a permit to enter. Mason stated that he, the General Manager, and the Plant Manager, decided to do the minimum necessary so it would appear to OSHA that the violations had been abated, even though the conditions continued to exist. Mason maintained that they had intended to satisfy the OSHA citations first and finish the implementation later. After initially satisfying OSHA, however, no further action was taken by Concrete Pipe to implement the confined space or lockout/tag-out plans.

II.
N.J.S.A. 34:15-8 provides that the compensation provisions of the Workmen's Compensation Act, N.J.S.A. 34:15-1 et seq., are the exclusive remedy for an employee whose injury is compensable under the Act. The Act expressly excepts liability for an "intentional wrong" from its coverage. Plaintiff argues that "[Concrete Pipe's] intentional and repeated failure to correct OSHA violations and its fraudulent misrepresentations to OSHA that it had abated unsafe working conditions represented actions ... within the intentional wrong exception of the exclusive remedy provision...." Thus, the issue here is whether Concrete Pipe's conduct rises to the level of an "intentional wrong."
The seminal case interpreting the scope of the term "intentional wrong" in this context is Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 501 A.2d 505 (1985). In Millison the plaintiffs alleged two claims of intentional wrongs against their former employer: (1) knowingly exposing employees to asbestos and not informing them of or protecting them from the risks of asbestos; and (2) fraudulently concealing from plaintiffs the results of company medical examinations revealing that they suffered from asbestos related diseases and sending them back to work and further asbestos exposure. Id. at 168-169, 501 A.2d 505. The issue presented was "what level of risk exposure is so egregious as to constitute an `intentional wrong.'" Id. at 177, 501 A.2d 505. The Court held that the intentional wrong analysis requires examination of the employer's conduct and its context. Id. at 178-179, 501 A.2d 505.
An intentional wrong generally requires a deliberate intent to injure: Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety *721 statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.
[Id. at 171, 501 A.2d 505 (quoting 2A A. Larson, The Law of Workmen's Compensation, § 68.13 at 13-22 to 13-27 (1983) (footnotes omitted)); see also Bryan v. Jeffers, 103 N.J.Super. 522, 523-524, 248 A.2d 129 (App.Div. 1968), certif. denied, 53 N.J. 581, 252 A.2d 157 (1969).]
While the Legislature did not intend the exception to be limited to acts of deliberate assault and battery, it is nonetheless narrowly construed. Id. at 177, 501 A.2d 505. The Court ultimately concluded that:
the mere knowledge and appreciation of a risksomething short of substantial certaintyis not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.
[Id. at 177, 501 A.2d 505 (quoting W. Prosser and W. Keeton, The Law of Torts, § 8 at 36 (5th ed.1984)).]
Thus, an employer's deliberate intent to injure may be demonstrated by an actual intent to injure or by knowingly exposing the employee to a risk that is substantially or virtually certain to result in injury or harm. Id. at 178, 501 A.2d 505; Laidlow v. Hariton Machinery Co., 335 N.J.Super. 330, 338-339, 762 A.2d 311 (App.Div.2000)[3]; McGovern v. Resorts Intern. Hotel, 306 N.J.Super. 174, 179, 703 A.2d 364 (App.Div.1997)(quoting N.J. Mfrs. Ins. v. Joseph Oat Corp., 287 N.J.Super. 190, 196-197, 670 A.2d 1071 (1995)). Applying this standard, the Millison Court dismissed count one of the complaint, noting that the employer's knowledge of the risks of disease and injury associated with asbestos exposure did not amount to the substantial certainty necessary to constitute an intentional wrong. However, Millison held that plaintiffs had pled a valid cause of action for the aggravation of their existing asbestos related diseases due to the defendants' concealment of the conditions. Id. at 181-182, 501 A.2d 505.
Here, there is no evidence that Concrete Pipe actually intended to injure Crippen, although defendants do not dispute that Crippen was exposed to a risk of injury. Hence, the narrow question is whether Concrete Pipe was substantially or virtually certain that death or injury would result from the risk such that it can fairly be found to have deliberately intended injury.
Viewed in the light most favorable to plaintiff, the evidence here "merely presents a work-place injury caused by either gross negligence or an abysmal lack of concern for the safety of employees." Marinelli v. Mitts & Merrill, 303 N.J.Super. 61, 72, 696 A.2d 55 (App.Div.1997). Concrete Pipe's persistent violation of OSHA safety regulations and its attempts to mislead OSHA into believing that the violations had been abated, in the face of minimal attempts to remedy the violations, are clearly reprehensible. Its knowledge of the risk is not at issue. The OSHA citations made Concrete Pipe aware that continued operation of the plant without abatement of the violations presented a real possibility of injury to its employees, specifically the material man. However, the evidence does not support plaintiff's assertion that injury or death was virtually certain to occur. It only indicates that "a known risk blossom[ed] into reality." Millison *722 v. E.I. du Pont de Nemours & Co., supra (101 N.J. at 178, 501 A.2d 505).
Plaintiff places emphasis on the statement from Concrete Pipe's Safety Director that he knew an employee could die in one of the confined spaces if the violations were not abated. This statement, however, merely evidences Concrete Pipe's awareness of the risk. Its decision to disregard that risk does not demonstrate that injury or death was a virtual certainty. Moreover, placing the incident in context, it is difficult to argue that Concrete Pipe knew with substantial certainty that an injury was to occur when there was no evidence of any prior accidents in which the material man had been injured. Laidlow v. Hariton Machinery Co., supra (335 N.J.Super. at 340-341, 762 A.2d 311). Crippen had been with the company for more than twenty-seven years, serving as a full time material man until five years prior to the accident when he became a part time material man and there is no evidence that he was previously injured or even experienced "close calls."
Plaintiff further argues that the factual scenario here is analogous to the second claim in Millison, and thus constitutes an intentional wrong. Here, plaintiff maintains that Concrete Pipe's fraudulent misrepresentations to OSHA regarding its supposed abatement of the cited violations are equivalent to the fraudulent concealment of medical records in Millison. Plaintiff seeks to extract from Millison a per se rule that fraudulent behavior on behalf of the employer resulting in injury constitutes an intentional wrong. However, plaintiff misconstrues Millison. The salient point in Millison is not that the employer concealed the medical records, but that the concealment of the records and the continued exposure to asbestos of employees already afflicted with asbestos related diseases virtually guaranteed aggravation of those employees' diseases. As stated, there was no such guarantee here. The evidence simply does not support a finding that Concrete Pipe knew with substantial certainty that its misrepresentations to OSHA would result in injury or death.
Plaintiff's reliance on Mabee v. Borden, 316 N.J.Super. 218, 720 A.2d 342 (App.Div. 1998), is likewise misplaced. Plaintiff maintains that in Mabee we broadened the interpretation of Millison's intentional wrong exception. In Mabee we held that the plaintiff had pled a viable cause of action under the intentional wrong exception where it was alleged that the employer had removed a safety device from a labeling machine which was installed after an earlier injury to an employee, and had utilized a bypass switch to provide greater access to the working parts of the machine. Id. at 233, 720 A.2d 342. Aside from the fact that Mabee is factually distinguishable from the case at bar, Mabee did not alter or extend the Millison standard. Laidlow v. Hariton Machinery Co., supra (335 N.J.Super. at 341, 762 A.2d 311). Therefore, we apply Millison and require a showing of a deliberate intent to injure. Here, plaintiff has failed to meet that standard.

III.
Additionally, plaintiff maintains that the judge erred in granting summary judgment on count one before completion of discovery. Plaintiff had not yet received the completed OSHA report or deposed Mason with respect to Concrete Pipe's "certainty" that an accident would occur.
Judge Feldman adequately addressed this issue in his oral decision on October 8, 1998. Rather than basing his decision solely on the documentation available to the plaintiff at the time of argument, the *723 judge assumed that plaintiff's allegations were true and that Concrete Pipe intentionally misled OSHA into believing that the violations had been corrected. The judge properly concluded that plaintiff's allegations failed to state a cause of action.
Summary judgment prior to discovery is appropriate where no amount of discovery will alter the outcome. See Apfel v. Budd Larner Gross, 324 N.J.Super. 133, 144, 734 A.2d 808 (App.Div.), certif. denied sub nom., 162 N.J. 485, 744 A.2d 1208 (1999); Pressler, Current N.J. Court Rules, comment on R. 4:46-2, 1523 (2001). In such circumstances, allowing the parties to engage in fruitless discovery would encourage frivolous and harassing litigation and would be a waste of resources. United Rental Equip. Co. v. Aetna Life and Casualty Ins. Co., 74 N.J. 92, 99, 376 A.2d 1183 (1977).
Here, considering plaintiff's allegations as true, the complaint fails to state a viable cause of action. Moreover, in point II we considered the OSHA file and plaintiff's additional discovery on count two of his complaint. The additional facts do not change the conclusion that plaintiff's claims are barred under N.J.S.A. 34:15-8. The motion judge thus properly granted summary judgment dismissing count one of plaintiff's complaint.
Affirmed.
NOTES
[1] Summary judgment was granted as to Gallo on the ground that no such entity existed. On June 16, 2000, the parties filed a stipulation of dismissal as to count two of the complaint, thus disposing of the remaining claims.
[2] Plaintiff asserts that OSHA's complete report on Crippen's death was not made available to the public when issued on December 1, 1998 (or prior to argument on the summary judgment motion) because the penalties assessed were appealed by Concrete Pipe.
[3] Appeal pending before the Supreme Court based on dissent.