810 A.2d 604 (2002)
355 N.J. Super. 380
Lisa SIMONELLI, Plaintiff-Appellant,
v.
Louis A. CHIAROLANZA, Esq., Samuel F. DeAngelis, Esq., Chiarolanza & DeAngelis, and Samuel N. Reiken, Esq., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2002.
Decided December 3, 2002.
*605 Christina M. Thomas and Steven A. Hershkowitz, New York, NY, argued the cause for appellant (Ms. Thomas, on the brief).
Lance J. Kalik argued the cause for respondents, Louis A. Chiarolanza, Samuel F. DeAngelis and Chiarolanza and DeAngelis (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Glenn A. Clark, Morristown, of counsel and on the brief, Mr. Kalik and David M. Steiner, on the brief).
Ronald Citrenbaum argued the cause for respondent Samuel N. Reiken (Fitzpatrick, Reilly, Supple and Gaul, attorneys; Mr. Citrenbaum, on the brief).
Before Judges KESTIN[1], EICHEN and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
Plaintiff appeals from an order granting summary judgment dismissing her legal malpractice action against defendants Samuel N. Reiken, Esq., Louis A. Chiarolanza, Esq., his partner, Samuel F. DeAngelis, Esq. and their law firm, Chiarolanza and DeAngelis. Reiken was plaintiff's initial attorney and was succeeded in her representation by Chiarolanza. The lawsuit involved allegations that the attorneys mishandled plaintiff's claim to the estate of plaintiff's fiancé Robert Courtney.
In this appeal we are called upon to address the meaning of the term "material provisions" in the holographic will statute, N.J.S.A. 3B:3-3, and whether a piece of paper found in a safe deposit box maintained by Courtney, met the statutory requirements for a holographic will. We conclude that "material provisions" require evidence of both testamentary and donative intent, both of which were lacking in this case. Because the existence of a valid holographic will provides the basis for plaintiff's claim of damages, we affirm the summary judgment in favor of defendants.
Giving plaintiff the benefit of all favorable inferences, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), the relevant facts are as follows. Plaintiff, Lisa Simonelli and Robert Courtney became engaged in March or April 1992, some two or three months after they met. A wedding was planned for October 1992, but was postponed twice, first to January 1993 and then again to April 1993, both times due to unforeseen events. Nonetheless, plaintiff moved into Courtney's condominium in October 1992, at which time Courtney began discussing with plaintiff the prospect of making a will. In plaintiff's presence, Courtney contacted an attorney to amend the deed of the condominium to include plaintiff's name. The attorney advised Courtney to wait until after the parties were married.
Toward the end of August 1992, in addition to supplying plaintiff with the name of an attorney, defendant, Samuel N. Reiken, Courtney gave plaintiff a set of keys to his safe deposit boxes at Chemical Bank and Summit Trust. Courtney told plaintiff that if anything happened to him, everything *606 she needed to be taken care of was in the boxes.
In addition to attempting to amend the deed to the condominium, Courtney discussed his intention to draw a will with a New York attorney, Robert Grohman, who had handled the estates of Courtney's parents. Grohman referred Courtney to Reiken because Courtney was a resident of New Jersey. A meticulous calendar kept by Courtney reflected that on August 2, 1992, a retainer agreement was entered into between Courtney and Reiken. Yet, it does not appear that Courtney ever met with Reiken. In fact, the calendar also indicates both Courtney intended to meet with Reiken on November 5, 1992, but also indicates that he intended to cancel the November 5 appointment in favor of either November 19 or December 4, 1992.
In any event, before such an appointment could be kept, Courtney became ill on November 27, 1992 and was rushed to the emergency room where he was diagnosed with ketoacidosis. At this time, Courtney reminded plaintiff not to forget about the safe deposit boxes. Courtney fell into a coma two days later and remained comatose until his death on December 24, 1992.
We need not provide any detail concerning plaintiff's dealings with Reiken, and subsequently with defendant Louis Chiarolanza, Esq., nor her specific allegations of malpractice because, as previously stated, the only facts needed to resolve this appeal deal with the legal significance of a note found in one of Courtney's safe deposit boxes. Specifically, we are satisfied, as was the motion judge, that the case turned on whether the note is legally cognizable as a holographic will.
The note in question was found on top of a jewelry pouch in Courtney's safe deposit box at Summit Bank. That box possibly contained, in addition, a single IRA.[2] The note contained printed language setting forth Courtney's name, address, and telephone number, as well as the name of attorney Grohman in Garden City, New York. Additionally, in Courtney's handwriting, the note, dated August 3, 1992, stated: "In case of death-goes to Lisa Simonelli." The note was signed by Courtney and further noted that "Lisa lives in Madison" and provided her phone number.
After reviewing the note in view of the discovery, Judge Cramp determined that the writing did not constitute a valid holographic will. On appeal, plaintiff claims that summary judgment was improvidently granted because there were genuine issues of material fact in dispute. Brill v. Guardian Life Ins. Co. of Am., supra, 142 N.J. at 540, 666 A.2d 146.[3] Specifically, plaintiff argues that the facts of record create a genuine issue as to whether the note constitutes a holographic will such that the issue should have been presented to a jury for determination. Alternatively, plaintiff contends that the circumstances leading up to Courtney's death create an issue of fact as to whether there had been a gift *607 causa mortis, that is, a gift made in contemplation of death, citing In the Matter of Estate of Link, 328 N.J.Super. 600, 605, 746 A.2d 540 (Ch.Div.1999).
We address the causa mortis issue first. This issue was never raised at the trial level but is now argued for the first time on appeal. Because it does not concern a matter "of great public interest," Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234-35, 300 A.2d 142 (1973), we decline to address it. See also Cornblatt v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998). In any event, even if we were to entertain the issue, it is clearly without merit. There was absolutely no evidence to suggest that Courtney took any action in view of impending death. Matter of Estate of Link, supra, 328 N.J.Super. at 606, 746 A.2d 540.
Turning to the holographic will issue, the governing statute, N.J.S.A. 3B:3-3, provides that:
A will which does not comply with N.J.S. 3B:3-2 [statute regarding formal wills] is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator.
In this case, the writing found in the safe deposit box is in Courtney's handwriting and is signed by him. However, more is required. In Matter of Will of Smith, 108 N.J. 257, 262, 528 A.2d 918 (1987), the Court held that the proponent of a holographic will bears the burden of producing evidence of testamentary intent, which is that the decedent intended the document to be a will. The Court stated:
Although the Wills Act recognizes holographic wills as valid, whether witnessed or not, nothing suggests that the Legislature intended to eliminate testamentary intent either for a holographic or for a more formally executed will. To the contrary, the Wills Act contemplates that testamentary intent is a requirement of both forms of wills.

[Id. at 262, 528 A.2d 918.]
The Court summarized its holding as follows:
[A] holographic writing prepared without testamentary intent may not be admitted to probate merely because it represents the probable intent of the writer.

[Id. at 258, 528 A.2d 918.]
The facts in Smith were as follows. Subsequent to Smith's husband's death, Smith delivered to her attorney a signed writing on a 5 X 7 notebook paper which read that her entire estate was to be left jointly to her stepdaughter and stepson. After Smith's death, her heirs, who would take by intestacy, challenged probate of the document as a will. At the probate trial, Smith's attorney testified that when Smith gave him the paper she stated, "this is my will, this is the way I want my estate to go." He also testified that Smith told him that "she would let me know if she wanted to make any changes."
Despite Smith's remarks, the attorney did not treat the writing as a will in that he deviated from his normal standard of practice of placing each will in a sealed envelope in a fireproof safe. Instead, Smith's attorney stapled the paper to Smith's late husband's file.
The trial court determined Smith had more than a general knowledge of the formal prerequisites for will writing, having just survived her late husband and having been involved with the probate of his will. The trial judge found her to be a "businesslike, meticulous person." Smith kept a detailed diary containing references to her business and personal life but no reference to an alleged will. These facts led the trial court to find that the note was the basis for the preparation of a will, but *608 not the actual will itself. The Supreme Court agreed, concluding "as a matter of fact that the decedent did not intend the challenged writing to be her last will and testament." Id. at 261, 528 A.2d 918.
The facts of the present case are even less persuasive for the finding of a holographic will than was the situation in Smith. In addition, this case is readily distinguishable from those cases where the required testamentary intent was found. See In the Matter of the Estate of Siegel, 214 N.J.Super. 586, 520 A.2d 798 (App.Div. 1987); In re Estate of Cunningham, 198 N.J.Super. 484, 487 A.2d 777 (Law Div. 1984). In both of those cases, the decedents had identified the documents as their wills. See Siegel, supra, 214 N.J.Super. at 588-89, 520 A.2d 798; Cunningham, supra, 198 N.J.Super. at 485-86, 487 A.2d 777. In this case, because the writing did not "manifest testamentary intent within [its] four corners," Smith, supra, 108 N.J. at 263, 528 A.2d 918, we may also look to extrinsic circumstances, even those after execution of the document, for proof of the decedent's intent. Siegel, supra, 214 N.J.Super. at 592, 520 A.2d 798. Here, Courtney never made any statement, to plaintiff or others, suggesting that the paper in the safe deposit box was intended to be a will. In fact, Courtney never even told plaintiff that such a document existed. Certainly, the document itself did not identify it as a will, as was the case in both Siegel and Cunningham. And, despite keeping a meticulous diary, Courtney never mentioned the existence of a will therein, as was the case in Smith. Further, the note is dated August 3, 1992, which predated the time when Courtney mentioned to plaintiff that he was intending to make a will and planned to see Reiken for that purpose. Considering all the relevant circumstances, we are entirely satisfied that, even giving plaintiff the benefit of all reasonable inferences, the record provided no basis for a finding of testamentary intent. While probable intent may have been present, testamentary intent was not. Matter of Will of Smith, supra, 108 N.J. at 265, 528 A.2d 918 ("the doctrine of probable intent is available only to interpret, but not to validate, a will").
We also agree with defendants that the will lacked other "material provisions" as required by the statute. N.J.S.A. 3B:3-3. There does not appear to be any case in our jurisdiction defining "material provisions." Accordingly, we must give the term its ordinary meaning. State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993); Matter of Estate of Krueger, 529 N.W.2d 151, 153 (N.D.1995). A matter may be said to be material when it is important or essential to the matter at hand. Webster's Third New International Dictionary, 1392 (1969); Blackstone's Law Dictionary, 1128 (Rev. 4th ed.1968). Thus, "material provisions" in the present context would include those provisions which would be important to the disposition intended to be made by the will, including, most significantly, a description of the property to be devised and those who are to receive it.
Cases from other jurisdictions support this view. In Matter of Krueger, supra, 529 N.W.2d at 153, the court held that "`material provisions' are those portions of a holographic will which express the testamentary and donative intent of the testator." (citation omitted). As in the Matter of Will of Smith, supra, 108 N.J. at 265, 528 A.2d 918 made clear, testamentary intent concerns whether the document was intended to be a will. Donative intent, as that term was used in Krueger, relates to words reflecting "[s]pecific bequests to particular legatees." Ibid. Such words constitute material provisions because they are the essence of any will. See In re *609 Estate of Foxley, 254 Neb. 204, 575 N.W.2d 150, 155 (1998).
The words used by Courtney in the present case are remarkably similar to those addressed in In re Blain's Estate, 140 Cal.App.2d 917, 295 P.2d 898 (1956). There, the decedent left a piece of paper wrapped around a ring in his safe deposit box with the words "to Sonia Lambert Frank Blain." The court found the document to be unacceptable, noting that "[a] holographic will must be complete in itself" and the paper in question "contains no description or specification of any property." Id. at 901. Similarly, in Estate of Wong v. Wong, 40 Cal.App. 4th 1198, 47 Cal.Rptr.2d 707 (1995), a note found among the decedent's papers stating, "All Tai-Kin Wong's Xi Zhao, my best half TKW, 12/31/92" was rejected as a holographic will passing Tai-Kin Wong's estate to his girlfriend Xi Zhao because it contained "no subject, no verb, no description of property, and no indication of its subject matter or purpose." Id. at 1199, 47 Cal. Rptr.2d 707. "[E]very will must contain operative words legally sufficient to create a devise of property." Id. at 1208, 47 Cal.Rptr.2d 707.
On the other hand, the words, "I give, devise, and bequeath all of my estate to Darrell Thomas Kuhio Casey" clearly revealed the decedent's intent. See Matter of Estate of Fitzgerald, 738 P.2d 236, 237-38 (Utah App.1987). And while not addressing the issue directly, it is clear that the court in In re Estate of Cunningham, supra, 198 N.J.Super. at 485-86, 487 A.2d 777, found "instructions concerning the donation of [decedent's] bodily remains, specific bequests and the devise and bequest of the remainder of [the] estate," to be "material provisions" required for a holographic will. Id. at 488, 487 A.2d 777.
In the present case, the note authored by Courtney does not explain what property constituted his estate such as would give meaning to the words "goes to Lisa Simonelli." Indeed, the paper does not even use a simple phrase such as "all my property." While we do not insist on any particular words, nor that "legalese" be employed, it is quite clear that the document at issue is so barren of "material provisions" as to fail to satisfy the requirements for a holographic will, as dictated by the statute. To hold otherwise would, in our view "effectively vitiate the statutory requirement[s]." Matter of Estate of Peters, 107 N.J. 263, 281, 526 A.2d 1005 (1987). As the Court noted, "strict, if not literal, adherence to statutory requirements is required in order to validate a will." Ibid.
Even if the paper was intended to refer to everything in the safe deposit box in which it was found, it is still deficient. The slip of paper was found in the box at Summit Bank which contained only a jewelry pouch and possibly one IRA. On the other hand, Courtney's safe deposit box at Chemical Bank contained four certificates of deposit totaling $229,800, a "Vanguard Employee Plan-$18,000," as well as "pieces of jewelry ... valuable papers, including Deed, etc., to the Condo [and] title to the vehicle." It is readily apparent that many items of considerable value were in the Chemical Bank box which could not reasonably be read as falling within the parameters of the note which was in the Summit box, even assuming that the note was not intended to be limited solely to the jewelry pouch but covered everything in that box. This circumstance reinforces our conclusion that the handwritten note did not contain the "material provisions" required by statute for a holographic will.
As a result, we conclude that Judge Cramp was correct in both respects; there was an absence of facts, either within the document or outside of it, demonstrating *610 testamentary intent, and the paper also lacked a clear statement of those donative provisions material to a will. Because no damages could have been proximately caused by any alleged negligence of the attorneys unless the document could have been found by a jury to be a holographic will, see Sommers v. McKinney, 287 N.J.Super. 1, 9-10, 670 A.2d 99 (App.Div. 1996), and because we have determined that it could not, summary judgment was properly granted.
To the extent plaintiff has made arguments on appeal which have not been expressly addressed in this decision, we have considered those arguments and have rejected them as without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Judge Kestin did not participate in the argument of this case. He has been added with consent of all counsel.
[2] The inventory of the Summit Bank box sets forth two items, "1. No benef. [beneficiary?] named on IRA; 2. Only jewelry is in a jewelry pouch with a handwritten note upon it." Plaintiff ultimately received the jewelry in the pouch.
[3] Plaintiff also claims, in the body of her brief but not in a separate point heading, see R. 2:6-2(a)(5), that discovery is incomplete. We conclude that any possible additional discovery would not have changed the outcome of the case. Crippen v. Central Jersey Concrete Pipe Co., 342 N.J.Super. 65, 76, 775 A.2d 716 (App.Div.2001), certif. granted, cause remanded by, 171 N.J. 440, 794 A.2d 179 (2002), adhered to by, 350 N.J.Super. 313, 795 A.2d 284 (App.Div.), certif. granted, 174 N.J. 361, 807 A.2d 193 (2002).